AMERICAN MANUFACTURERS MUTUAL INSURANCE COMPANY, AMERICAN PROTECTION INSURANCE COMPANY, FEDERAL KEMPER INSURANCE COMPANY, KEMPER SECURITY INSURANCE COMPANY, LUMBERMENS MUTUAL CASUALTY COMPANY, AMERICAN MOTORISTS INSURANCE COMPANY v. JOHN RANDOLPH INGRAM, COMMISSIONER OF INSURANCE OF THE STATE OF NORTH CAROLINA, THE HEALTH CARE LIABILITY REINSURANCE EXCHANGE: THOMAS GRIFFITH AND CO., INC., and THOMAS C. HAYS, JR., INDIVIDUALLY AND AS REPRESENTATIVES OF THE NORTH CAROLINA AGENCIES AND AGENTS OF THE PLAINTIFFS IN THIS ACTION; DRS. JULIAN T. SUTTON AND G. VANCE BYRUM, P.A., JULIAN T. SUTTON, M.D., G. VANCE BYRUM, M.D., ANDERSON PAGE HARRIS, M.D., WILLIAM RUSSELL GRIFFIN, JR. AND DONALD GEORGE JOYCE, INC., DONALD GEORGE JOYCE, M.D., WILLIAM RUSSELL GRIFFIN, JR., M.D., FORSYTH SURGICAL ASSOCIATES, P.A., ROBERT L. MEANS, M.D., RILEY M. JORDAN, M.D., WILLIAM W. SUTTON, M.D., DAVID ALLYN SCUDDER, M.D., TERESITA J. FERRER ESTOYE, M.D., WAKE ANESTHESIOLOGY ASSOCIATES, INC., J. LEROY KING, M.D., LAWRENCE B. HAYNES, M.D., JAFAR M. SCHICK, M.D., ET AL.

No. 15

(Filed 7 October 1980)

1. **Insurance § 3.1; Physicians, Surgeons and Allied Professions § 11; Statutes § 8.1– medical malpractice insurance binder – effect of unconstitutional statute**

    A binder for medical malpractice insurance issued by plaintiff insurer to defendant physicians while general liability insurers were required by the Health Care Liability Reinsurance Exchange Act to write such insurance was not void because the Reinsurance Exchange Act was thereafter declared unconstitutional where the record shows that plaintiff did not enter into the insurance binder contract involuntarily under coercion of the unconstitutional statute but that plaintiff deliberately and voluntarily decided to assume the liability and entered into a contract to insure defendants for thirty days regardless of the constitutionality of the Reinsurance Exchange Act.

2. **Insurance § 4.1– medical insurance binder – constitutionality of statute as condition – alteration by letter**

    Any attempt by plaintiff insurer to make a binder for medical malpractice insurance conditional upon the constitutionality of the Health Care

Insurance Co. v. Ingram, Comr. of Insurance

Liability Reinsurance Exchange Act through a "Statement of Intent, Notice of Protest and Reservation of Rights" sent to defendant physicians was altered by a letter from plaintiff's agent to an agent for both plaintiff and defendants stating that defendants were fully covered.

3. **Insurance § 4.1– medical malpractice binder – contention of voidness – effect of failure to cancel**

The trial court erred in concluding that plaintiff insurer remained bound by a medical malpractice insurance binder which it contended was void because of its failure to cancel the binder, since the very fact of an attempt to cancel an insurance policy is an admission that there is a policy, and plaintiff may have waived the ground upon which it sought to avoid the policy in question and others by any attempt to cancel what it contended was a nullity.

Justice BROCK took no part in the consideration or decision of this case.

APPEAL by defendants Wake Anesthesiology Associates, Inc., and its employees, Drs. Haynes, King and Schick, from decision of the Court of Appeals, 43 N.C. App. 621, 260 S.E. 2d 120 (1979), reversing judgment of *Smith (Donald), J.,* entered 24 July 1978 in WAKE Superior Court. A petition by these appellants for discretionary review was at first denied but later granted on rehearing.

Based upon stipulations of the parties at trial and the findings of the trial court to which no exceptions have been taken, the facts and circumstances which give rise to this appeal may be briefly stated as follows.

In 1975, a medical malpractice insurance crisis developed in North Carolina when the companies which traditionally provided such coverage announced their withdrawal from the malpractice insurance market. The General Assembly responded to the crisis on 28 May 1975 by enacting Chapter 427 of the 1975 North Carolina Session Laws entitled "An Act to Establish a Health Care Liability Reinsurance Exchange" (the Act) which was subsequently codified as G.S. 58-173.34 *et seq.* The Act required certain classes of general liability insurers, licensed to write liability insurance in North Carolina, to insure applicants for medical malpractice insurance, to participate in a non-profit, unincorporated legal entity created by the Act known as the North Carolina Health Care Liability Reinsurance Ex-

change (the Reinsurance Exchange) and to participate in losses suffered by the Reinsurance Exchange on a pro rata basis based on the amount of general liability insurance written by the insurer in North Carolina. A general liability insurer could not engage in the writing of any liability insurance in North Carolina unless it complied with the provisions of the Act by providing medical malpractice insurance and participating in the Reinsurance Exchange.

Plaintiffs on this appeal are an affiliated group of Illinois insurance corporations collectively known as the Kemper Group, authorized to write general liability coverage in North Carolina. Prior to 1975, they were not writing health care liability insurance in North Carolina and had no personnel in the State with expertise in this field of insurance. The plan of operation for the Reinsurance Exchange was promulgated by the Commissioner of Insurance on 6 August 1975. Shortly thereafter, general liability insurers writing insurance in North Carolina began filing numerous individual suits challenging the constitutionality of the Reinsurance Exchange legislation and obtaining preliminary injunctions staying the application of the Act. Plaintiffs subscribed to the plan of operation subject, however, "to the reservation of its rights through legal proceedings to question the legality of said plan and the statute authorizing its adoption."

On 24 September 1975, plaintiffs mailed to each of their agents a document entitled "Statement of Intent, Notice of Protest and Reservation of Rights" which contained the following:

"Any policy or binder of physicians and surgeons professional liability insurance issued by the Kemper Insurance Company identified below, hereinafter referred to as the Company, is issued under the mandate of North Carolina House Bill 74, Chapter 427, Session Laws of 1975, (G.S. 58-173.23 et seq.) [sic] and is issued under protest and not as a voluntary act of the Company.

The validity of this statute is being tested in court. The Company intends to reinsure all eligible physicians and

surgeons professional liability insurance policies and binders in the North Carolina Health Care Liability Reinsurance Exchange, an entity created by the statute. The Company does not intend to assume any risk on its own account.

Any coverage under this policy or binder may be contingent upon the statute being valid and the ability of the Reinsurance Exchange to adequately reinsure this policy or binder.

In the event that any court declares, or enters a judgment the effect of which is to render the provisions of House Bill 74, Chapter 427, Session Laws of 1975 (G.S. 58-173.23 et seq.) [sic] invalid or unenforceable in whole or in part, or in the event the Reinsurance Exchange is inadequately funded, the Company may have the option to consider this policy as null and void as of the inception date. The Company intends to exercise that option if it is available."

Moore and Johnson Insurance Agency (Moore and Johnson), which had represented the Kemper Group in Raleigh for approximately ten years, acknowledged receipt of the "Statement of Intent, Notice of Protest and Reservation of Rights" in a letter dated 29 September 1975 written by Earl Johnson.

Since 1969, Moore and Johnson had been employed by Wake Anesthesiology Associates, Inc., and the doctors practicing therewith, Haynes, King and Schick, to provide medical malpractice insurance coverage. This coverage had been provided since 1969 by St. Paul Fire and Marine Insurance Company, which gave notice that it would terminate coverage at 12:01 a.m., 1 October 1975. Harry W. Moore of Moore and Johnson undertook to obtain other malpractice insurance coverage for defendant appellants who had decided to limit their professional practice to emergency cases only due to the unavailablility of medical malpractice insurance. On 30 September, Moore and Johnson verbally bound coverage to defendant appellants on behalf of Lumbermens Mutual Casualty Company (Lumbermens), a plaintiff in this action, for a period beginning 1 October 1975 and ending 1 November 1975. Based upon the verbal binder, defendant appellants continued the next day and thereaf-

ter to perform without restriction or limitation their usual professional services. Lumbermens issued a written binder which was forwarded to defendant appellants by Moore and Johnson on 17 October 1975. The "Statement of Intent, Notice of Protest and Reservation of Rights" was attached to the binder. In a letter sent to defendant appellants with the binder, Harry Moore wrote in part the following:

> "Enclosed is the Malpractice Insurance Binder issued in the Lumbermen's Mutual Casualty Company to cover your operations for a period from 10/1/75 to 11/1/75. The reason for the binder instead of a policy is that the Lumbermen's Mutual Casualty Company does not have the necessary forms on hand to issue policies at this time. They expect to have them in within the next week or so at which time they will issue the policy, and we will forward to you . . . .
>
> I discussed the attached Statement of Intent with Dr. Haynes this afternoon and explained to him that I had a conversation with the insurance company this morning in which they stated that the Statement of Intent did not accurately express their position. They assured me that regardless of the wording of the Statement of Intent, your coverage is and will be in force and that you have nothing to worry about on this score. To be on the safe side, I wrote Mr. Russ Cossart, Manager of the commercial lines underwriting department of the insurance company, reviewing our conversation and asking for written confirmation. As soon as we receive his reply, I will send you a copy.
>
> At this moment, based on assurances from the insurance company, I can assure you that you are fully and adequately covered up to $1,000,000. If there are any new developments, I will, of course, get in touch with you at once. If you have any questions, in the meantime, please do not hesitate to call me."

Harry Moore, that day, wrote Russell Cossart, the Commercial Lines Underwriting Manager for Kemper Insurance, requesting written confirmation of the effect of the "Statement of

Intent, Notice of Protest and Reservation of Rights" on the insurance binder. In his letter to Cossart, Moore stated:

"Today we received binders in the Lumbermen's Mutual Casualty Company for the physicians in caption with your Statement of Intent attached. After receiving these binders, I called you to discuss coverage that would be afforded these physicians in the event the North Carolina Health Care Liability Reinsurance Exchange was found to be unconstitutional by the North Carolina Courts.

In our conversation you assured me that regardless of the wording in the Statement of Intent, if the Reinsurance Exchange was found to be unconstitutional, the physicians covered by these binders and subsequent policies to be issued when the proper forms are available would have malpractice coverage for the period of their binders or policies. Depending on the Court ruling, it is our understanding that their coverage could be either with the Lumbermen's Mutual or some company to be designated as the carrying company for the Exchange."

Cossart in reply to this letter on 30 October 1975 stated:

"As we all agree, the malpractice mess has us all in a lot of trouble and therefore the companies that are involved are trying to protect themselves against being forced into something that they are either not capable of handling or choose to not handle because of the guaranteed loss involved.

We still do not know where we stand with regard to the constitutionality of the Malpractice Act nor do we know where we stand as far as the St. Paul is concerned, but at this point I think we have to agree that the company is offering binders for malpractice coverage which means that we are the carrier at this point. Hopefully all of this will be resolved the week of Nov. 3 and the persons seeking insurance will find a market that is technically competent to handle this insurance."

The binder expired the next day. The binder contained a termination clause which provided:

"This binder shall expire at the end of the binder period shown in Item 3 or it shall terminate (1) immediately on notice of cancelation by the named insured or the company or (2) on its effective date if replaced by a policy as stated herein."

Defendant appellants were never given notice of cancellation of the binder. No premiums were ever billed to defendant appellants for the binder.

On 6 October 1976, defendant appellants were sued for damages in a civil action alleging professional malpractice arising out of acts committed on 5 October 1975. Lumbermens denied coverage, contending its binder was void *ab initio* because the unconstitutional Reinsurance Exchange Act had coerced Lumbermens into issuing it.

On 30 September 1975, the day the verbal binder was issued to defendant appellants, plaintiffs filed a complaint in Wake Superior Court seeking declaratory and injunctive relief from the Reinsurance Exchange and its enabling legislation. Plaintiffs requested the trial court to "enter a declaratory judgment determining that the Act is unlawful, invalid and void and that all applications received and binders issued thereunder are null, void and unenforceable . . . ." A temporary restraining order was issued at 5:30 p.m. the same day staying the Commissioner of Insurance from applying the provisions of the Act to plaintiffs. Some forty-eight physicians and professional associations, including defendant appellants, had been given verbal binders by agents for plaintiffs before the temporary restraining order was granted on 30 September, but they were not made parties to the 30 September action until the trial court so ordered on 29 October 1975. Defendant appellants were served with a summons and copy of the complaint on the day the binder expired.

On 9 October 1975, this action was consolidated with all other actions seeking similar relief and a preliminary injunc-

tion was subsequently issued. On 29 October 1975, the day defendant appellants were made parties to the action, the trial court severed from the action to have the Reinsurance Exchange legislation declared unconstitutional the claim for relief which requested that binders issued by plaintiffs be declared null and void. The Reinsurance Exchange Act was declared unconstitutional in Wake Superior Court on 7 November 1975, a judgment this Court affirmed in 290 N.C. 457, 226 S.E. 2d 498 (1976). The Reinsurance Exchange ceased to operate from the date of the judgment in Superior Court.

The severed claim for relief from binders issued by plaintiffs to the forty-eight physicians and professional associations was tried without a jury at the 24 April 1978 Session of Wake Superior Court. Only Wake Anesthesiology Associates, Inc., and Drs. Haynes, King and Schick were represented by counsel. Based upon its findings of fact, the trial court made the following conclusions of law:

"1. Harry W. Moore, in his capacity as an independent insurance agent in Raleigh, North Carolina, was an agent both for the plaintiffs herein and for defendants, Wake Anesthesiology Associates, Inc., and Drs. Haynes, King and Schick.

2. Russ Cossart was an agent for the plaintiffs herein.

3. Harry W. Moore had apparent authority to alter the terms of the Statement of Intent, Notice of Protest and Reservation of Rights but neither Harry W. Moore nor any other employee of Moore & Johnson Insurance Agency effectively altered the terms of such Statement of Intent.

4. Russ Cossart had apparent authority to alter the terms of the Statement of Intent, Notice of Protest and Reservation of Rights, but he did not effectively alter such terms.

5. There is an actual presently existing controversy between the plaintiffs and defendants, Wake Anesthesiology Associates, Inc., and Drs. Haynes, King and Schick, and

declaratory relief is therefore an appropriate remedy as to those defendants and as to them only. There is no actual presently existing controversy between plaintiffs and the remaining named defendants, and declaratory relief is therefore not an appropriate remedy as to them.

6. Plaintiffs have not effectively cancelled their binder pursuant to the terms of the Statement of Intent, Notice of Protest and Reservation of Rights set forth in paragraph 8. Accordingly, the binder issued by plaintiffs to defendants Wake Anesthesiology Associates, Inc., and Drs. Haynes, King and Schick for the period October 1, 1975 to November 1, 1975 is still valid and in full force and effect. The joining of these defendants on October 29, 1975 to these legal proceedings does not constitute notice of cancellation of defendants' coverage or adequate notice that the plaintiffs intend to exercise rights reserved in Statement of Intent, Notice of Protest and Reservation of Rights.

7. The binder and Statement of Intent, Notice of Protest and Reservation of Rights, should be construed strictly against plaintiffs and in favor of the insureds and any ambiguities therein should be resolved in favor of the insured defendants."

Plaintiffs appealed the judgment entered thereon adjudging that the binder issued to defendants Wake Anesthesiology Associates, Inc., and Drs. Haynes, King and Schick was valid and in full force and effect. Plaintiffs also appealed the dismissal of their claim for declaratory relief against all other defendants. The Court of Appeals reversed, holding that the binder issued to Wake Anesthesiology Associates, Inc., and Drs. Haynes, King and Schick was void *ab initio* as an involuntary action and that whether plaintiffs took steps to cancel it was of no consequence. As to the other defendants, the Court of Appeals reversed the judgment denying declaratory relief regarding the validity of the binder issued to the other defendants and, as to them, remanded the case for further proceedings. Only defendants Wake Anesthesiology Associates, Inc., and Drs. Haynes, King and Schick appealed to this Court. All matters concerning all other defendants are now before the

trial court on remand from which no appeal was taken.

*John R. Jordan, Jr.; Robert R. Price; Henry W. Jones, Jr., attorneys for plaintiff appellees*

*Tharrington, Smith & Hargrove by Wade M. Smith and Steven Evans, attorneys for defendant appellants.*

HUSKINS, Justice:

[1] This appeal poses the question whether Lumbermens Mutual can avoid its insurance contract with defendant appellants because the Health Care Liability Reinsurance Exchange Act was declared unconstitutional. We hold that the facts of this case require a negative answer.

It is a rule of statutory construction that a statute declared unconstitutional is void *ab initio* and has no effect. *Board of Managers v. Wilmington,* 237 N.C. 179, 74 S.E. 2d 749 (1953); *Idol v. Street,* 233 N.C. 730, 65 S.E. 2d 313 (1951); *Sessions v. Columbus County,* 214 N.C. 634, 200 S.E. 418 (1939); *State v. Williams,* 146 N.C. 618, 61 S.E. 61 (1908). This rule was best stated in *Norton v. Shelby County,* 118 U.S. 425, 442, 30 L.Ed. 178, 186, 6 S.Ct. 1121, 1125 (1886), where Justice Field, speaking for the Court, said: "An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." Depending on the circumstances, courts have employed other rules which avoid the hard and fast consequences of the rule enunciated in *Norton.* A court may employ the rule that a statute is presumed valid until declared invalid; or, in a case-by-case analysis, an unconstitutional statute may be given some effect, for example, by way of estoppel or due to a mistake of law. O. Field, The Effect of an Unconstitutional Statute 2-8 (1935).

The United States Supreme Court itself has retreated from the broad statement set out in *Norton.*

"It is quite clear, however, that such broad statements

as to the effect of a determination of unconstitutionality must be taken with qualifications. The actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration. The effect of the subsequent ruling as to invalidity may have to be considered in various aspects, — with respect to particular relations, individual and corporate, and particular conduct, private and official. Questions of rights claimed to have become vested, of status, of prior determinations deemed to have finality and acted upon accordingly, of public policy in the light of the nature both of the statute and of its previous application, demand examination. These questions are among the most difficult of those which have engaged the attention of courts, state and federal, and it is manifest from numerous decisions that an all-inclusive statement of a principle of absolute retroactive invalidity cannot be justified."

*Chicot County Drainage District v. Baxter State Bank,* 308 U.S. 371, 374, 84 L.Ed. 329, 332-33, 60 S. Ct. 317, 318-19 (1940); *see also, Linkletter v. Walker,* 381 U.S. 618, 14 L.Ed. 2d 601, 85 S.Ct. 1731 (1965). In a later decision quoting in part from *Linkletter* and *Chicot County,* the United States Supreme Court stated:

"The process of reconciling the constitutional interests reflected in a new rule of law with reliance interests founded upon the old is 'among the most difficult of those which have engaged the attention of courts, state and federal ... .'" Consequently, our holdings in recent years have emphasized that the effect of a given constitutional ruling on prior conduct 'is subject to no set "principle of absolute retroactive invalidity" but depends upon a consideration of "particular relations ... and particular conduct ... of rights claimed to have become vested, of status, of prior determinations deemed to have finality"; and "of public policy in the light of the nature both of the statute and of its previous application." ' ... However appealing the logic of Norton may have been in the abstract, its abandonment reflected our recognition that statutory or even judge-made rules of law are hard facts on which people must rely

in making decisions and in shaping their conduct. This fact of legal life underpins our modern decisions recognizing a doctrine of nonretroactivity."

*Lemon v. Kurtzman,* 411 U.S. 192, 198-99, 36 L.Ed. 2d 151, 160, 93 S.Ct. 1463, 1468 (1973) (Citations omitted). This does not mean that every unconstitutional statute, "like every dog, gets one bite, if anyone has relied on the statute to his detriment." *New York v. Cathedral Academy,* 434 U.S. 125, 130, 54 L.Ed. 2d 346, 352, 98 S.Ct. 340, 344 (1977). It does mean that a test of reasonableness and good faith is to be applied in determining the effect which a judicial decision that a statute is unconstitutional will have on the rights and obligations of parties who have taken action pursuant to the invalid statute.

Other courts have adopted such a test in deciding whether to give retroactive or prospective effect to their declaration that a statute is unconstitutional. *See, e.g., Cardinal Glennon Memorial Hospital v. Gaertner,* 583 S.W. 2d 107 (Mo. 1979); *Wagshal v. Selig,* 403 A. 2d 338 (D.C. 1979); *Plumley v. Hale,* 594 P. 2d 497 (Alaska 1979); *Cumberland Capital Corp v. Patty,* 556 S.W. 2d 516 (Tenn. 1977); *Stanton v. Lloyd Hammond Farms,* 400 Mich. 135, 253 N.W. 2d 114 (1977); *Perkins v. Eskridge,* 278 Md. 619, 366 A. 2d 21 (1976).

This Court has also retreated from the absolute rule that an unconstitutional statute is a nullity. In *Roberson v. Penland,* 260 N.C. 502, 133 S.E. 2d 206 (1963), the plaintiffs entered into a consent judgment and executed a deed on the understanding that the defendant widower had a right to dissent from the will of his deceased wife. Following the execution of these documents, this Court held that the statute giving the husband the right to dissent was unconstitutional. The plaintiffs then sought, without success, to have the consent judgment and deed set aside. The Court said:

"In this case the rights of the parties are fixed by solemn warranty deed and consent judgment. These may not be set aside merely because eminent lawyers were unable to anticipate that this Court would strike down the Act of the General Assembly which permitted the dissent. The

Insurance Co. v. Ingram, Comr. of Insurance

rights of the parties are fixed by the judgment and the deed. These documents provide road blocks which the Court may not remove merely because the parties were mistaken as to one or more of the factual considerations which induced them."

260 N.C. at 506, 133 S.E. 2d at 208. The Court rejected application of the hard and fast rule in *Norton* and adopted the reasoning of the *Chicot County* case. It must therefore be recognized in this case that the unconstitutionality of the Reinsurance Exchange Act alone will not void *ab initio* Lumbermens' contract with defendant appellants.

For Lumbermens to escape the contract, the record must demonstrate that it entered into the contract involuntarily under coercion of the unconstitutional statute. As stated in *McLean Coal Co. v. Pittsburg Terminal Coal Corp.*, 328 Pa. 250, 253, 195 A. 4, 6 (1937), and quoted with approval in *Roberson v. Penland:*

"The unconstitutionality of a statute is a defense to an action only when the liability is created by the statute in question; the invalidity of the act is of no avail when the liability arises from acts indicating the assumption of liability by parties who may, it is true, be acting only because the statute was passed, but who are, nevertheless voluntarily assuming a relationship which creates a liability."

This record demonstrates that as to defendant appellants, Lumbermens made a studied decision after weighing the alternatives available to it and voluntarily assumed the contractual relationship of insurer.

The insurance binder at issue in this case is not clear in its terms. The "Statement of Intent, Notice of Protest and Reservation of Rights" conflicts with the letter by Cossart. The general rule that a contract is interpreted against the party who drafts it in cases of doubt or ambiguity has been given effect in cases involving problems with insurance. *Woods v. Insurance Co.*, 295 N.C. 500, 246 S.E. 2d 773 (1978); *Grabbs v.*

*Insurance Co.*, 125 N.C. 389, 34 S.E. 503 (1899). "Why these two apparently conflicting provisions should have been inserted in the same contract is not easy to perceive, but in keeping with the general rule of construction, with respect to ambiguously worded policies of insurance, where they are reasonably susceptible of two interpretations, we think the one more favorable to the assured should be adopted." *Bennett v. Insurance Co.*, 198 N.C. 174, 176, 151 S.E. 98, 99 (1930). It is difficult to imagine a more ambiguous and equivocal insurance contract than that created by issuing a binder with a reservation of rights as to coverage and following that with a clarifying letter stating defendant appellants were fully covered. Mr. Moore, the agent for both Lumbermens and defendant appellants, wrote Lumbermens' agent, Cossart, requesting confirmation of the coverage. In his 17 October letter, Moore wrote:

> "In our conversation you assured me that regardless of the wording in the Statement of Intent, if the Reinsurance Exchange was found to be unconstitutional, the physicians covered by these binders and subsequent policies to be issued when the proper forms are available would have malpractice coverage for the period of their binders or policies. Depending on the Court ruling, it is our understanding that their coverage could be either with the Lumbermens Mutual or some company to be designated as the 'carrying company' for the Exchange."

Cossart in reply to this letter on 30 October stated:

> "We still do not know where we stand with regard to the constitutionality of the Malpractice Act nor do we know where we stand as far as the St. Paul is concerned, but *at this point I think we have to agree that the company is offering binders for malpractice coverage which means that we are the carrier at this point.* Hopefully all of this will be resolved the week of Nov. 3 and the persons seeking insurance will find a market that is technically competent to handle this insurance." (Emphasis added)

Construing the ambiguities in favor of the insured, it is clear that Lumbermens deliberately and voluntarily decided to

assume the liability and entered into a contract to insure defendant appellants for thirty days regardless of the constitutionality of the Reinsurance Exchange Act. It was a voluntary, arm's length transaction. The Court of Appeals erred in its conclusion to the contrary.

The trial court concluded that the conditions of the reservation of rights were not altered by anyone. It further concluded that Lumbermens, because it had not effectively canceled the binder, remained bound. In these two conclusions, the trial court erred.

[2] An insurance company has a right to fix conditions upon which it will become liable and it is for the party seeking insurance to accept or refuse such conditions. *Saunders v. Insurance Co.*, 272 N.C. 110, 157 S.E. 2d 614 (1967); 1 Couch on Insurance 2d § 14:39. The constitutionality of the Reinsurance Exchange Act was not a factor upon which the effectiveness of the binder to defendant appellants was made conditional. The contract entered into by Lumbermens and defendant appellants survived the determination that the Reinsurance Exchange Act was unconstitutional. Any attempt by Lumbermens to make the binder conditional upon the constitutionality of the Reinsurance Exchange through its "Statement of Intent, Notice of Protest and Reservation of Rights" was altered by the letter of Cossart to Moore. Contrary to the conclusion of the trial court, this was an alteration of the insurance contract which Cossart, as plaintiffs' agent, had apparent authority to make.

[3] The argument of plaintiffs throughout has been that there was no valid insurance coverage. Our conclusion as to defendant appellants is to the contrary. Even so, failure to cancel the binder is not a proper reason for holding Lumbermens to its contract. As the Court of Appeals correctly noted, plaintiffs may very well have waived the very ground upon which they sought to avoid this policy and others by any attempt to cancel what they argued was a nullity. The very fact of an attempt to cancel a policy is an admission that there is a policy. 17 Couch on Insurance 2d § 67:50; 12 Appleman, Insurance Law and Practice § 7124.

In view of the posture of this case wherein only one group of defendants appealed to this Court and that group established a special set of facts, we do not reach the question of retroactivity of this Court's decision declaring the Reinsurance Exchange Act unconstitutional. Regardless of whether that decision is retroactive, defendant appellants had a valid, enforceable insurance contract with Lumbermens for the month of October 1975.

As the case now stands with respect to the other defendants, it has been remanded to the trial court for further proceedings to determine the validity of their contracts. On the record before us, we neither reach nor decide the question whether those contracts are enforceable.

For the reasons stated, the decision of the Court of Appeals is reversed. The case is remanded to the Court of Appeals for further remand to Wake Superior Court for entry of judgment in favor of Wake Anesthesiology Associates, Inc., and its employees, Drs. Haynes, King and Schick in accord with this opinion.

Reversed and Remanded.

Justice BROCK took no part in the consideration or decision of this case.