IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA19-37

 Filed: 19 November 2019

Wake County, No. 17 OSP 562

DAVID PRICKETT, Petitioner,

 v.

NORTH CAROLINA OFFICE OF STATE HUMAN RESOURCES, Respondent.

 Appeal by respondent from final decision dated 11 September 2018 by Judge

Melissa Owens Lassiter in the Office of Administrative Hearings. Heard in the Court

of Appeals 17 October 2019.

 Law Offices of Michael C. Byrne, by Michael C. Byrne, for Petitioner-Appellee.

 Attorney General Joshua H. Stein, by Special Deputy Attorney General
 Matthew Tulchin, for Respondent-Appellant North Carolina Office of State
 Human Resources.

 ARROWOOD, Judge.

 Respondent North Carolina Office of State Human Resources (“OSHR”)

appeals from a final decision of the Office of Administrative Hearings (“OAH”)

granting a motion for summary judgment by David Prickett (“petitioner”) and

denying OSHR’s motions for summary judgment. For the following reasons, we

reverse.

 I. Background
 PRICKETT V. OSHR

 Opinion of the Court

 On 25 September 2014, petitioner was hired as a “Communications Director”

for OSHR, and was to report directly to the Chief Deputy State Human Resources

Director. His position was characterized as a “confidential assistant,” and was

therefore deemed statutorily exempt from the State Human Resources Act pursuant

to N.C. Gen. Stat. § 126-5(c)(2) (2017). As an exempt employee, petitioner could be

fired at-will for any nondiscriminatory reason. Petitioner worked in this exempt

position from 13 October 2014 through 22 December 2016, at which point then-

Governor Pat McCrory changed petitioner’s exempt status to non-exempt.

 On 19 December 2016, following the election of Governor Roy Cooper, the

General Assembly passed Session Law 2016-126, which made several amendments

to Chapter 126 of the North Carolina General Statutes (the “State Human Resources

Act” or “SHRA”). Specifically, an amendment to N.C. Gen. Stat. § 126-5(d)(1) reduced

the number of state government positions the Governor could deem “exempt” from

the State Human Resources Act from 1500 to 425. 2016 N.C. Sess. Law ch. 126, §§ 7,

8. It also removed OSHR from the list of cabinet department positions the Governor

could deem exempt. In addition, a new provision, codified at N.C. Gen. Stat. § 126-

5(d)(2c), provided that employees designated exempt pursuant to N.C. Gen. Stat. §

126-5(d)(1) who the Governor changes to “non-exempt” would gain immediate career

State employee status (hereinafter the “Career Status Law”). Id.

 -2-
 PRICKETT V. OSHR

 Opinion of the Court

 As a career State employee, an employee enjoys the protection of the SHRA

and can only be fired for cause. Prior to the enactment of the Career Status Law, an

employee was required to work in a non-exempt position for at least twelve

consecutive months before they could attain career status. See N.C. Gen. Stat. § 126-

1.1(a) (2017). During that 12-month period, the non-exempt employee was considered

to be probationary and not yet subject to the provisions of the SHRA. Id. The Career

Status Law effectively eliminated this probationary period for certain previously

exempt employees whose designation was changed to non-exempt.

 Following the passage of these amendments, then-Governor McCrory changed

petitioner’s position from exempt to non-exempt effective 22 December 2016. On

30 December 2016, Governor-elect Cooper filed a lawsuit, Cooper, III v. Berger, No.

16 CVS 15636, 2017 WL 1433245 (N.C. Super. Mar. 17, 2017) (hereinafter “Cooper

I”), challenging the recent amendments to the SHRA. This lawsuit included a

challenge to the Career Status Law. Cooper I, 2017 WL 1433245, at *2. On

3 January 2017, the Chief Justice of the North Carolina Supreme Court appointed a

three-judge panel of the Superior Court to hear Cooper I. Id. at *1. While that case

was pending, petitioner received a letter on 19 January 2017 informing him that

Governor Cooper reversed his position back to exempt status, and that he was

terminated as of the end of day. On 27 January 2017, petitioner filed a Petition for

 -3-
 PRICKETT V. OSHR

 Opinion of the Court

Contested Case Hearing in the OAH, challenging his termination on grounds he could

only be fired for cause.

 On 17 March 2017, the three-judge panel appointed to hear Cooper I granted

summary judgment to Governor Cooper. The panel found that N.C. Gen. Stat. § 126-

5(d)(2c), the Career Status Law, was unconstitutional and enjoined its enforcement.

Cooper I, 2017 WL 1433245, at *13. The defendants subsequently appealed that

decision to this Court. Prior to this Court considering the appeal, the Career Status

Law was repealed on 25 April 2017 by Session Law 2017-6. 2017 N.C. Sess. Law 6, §

1. On 26 April 2017, the Cooper I defendants filed a motion asking this Court to

dismiss as moot their appeal of the Career Status Law, and to vacate the lower court’s

decision. On 11 May 2017, this Court granted the motion to dismiss the appeal, but

denied the motion to vacate the lower court’s decision. On 11 September 2018, the

administrative law judge (“ALJ”) issued a final decision granting summary judgment

to petitioner and denying OSHR’s motions for summary judgment. OSHR appealed

the ALJ’s decision on 11 October 2018.

 II. Discussion

 On appeal, OSHR contends the ALJ erred in granting petitioner’s motion for

summary judgment and denying its motions for three reasons. First, former

Governor McCrory had no authority in the first instance to change petitioner’s status

from exempt to non-exempt. Second, the ALJ’s decision runs contrary to the Superior

 -4-
 PRICKETT V. OSHR

 Opinion of the Court

Court ruling in Cooper I, which found the Career Status Law to be unconstitutional.

Finally, any notice violation was procedural in nature, not substantive, and thus the

appropriate remedy is not reinstatement of petitioner.

 This Court “appl[ies] the same review standard established by Rule 56 of the

North Carolina Rules of Civil Procedure when reviewing an agency’s summary

judgment ruling, and our scope of review is de novo.” Heard-Leak v. N.C. State Univ.

Ctr. for Urban Affairs, 250 N.C. App. 41, 45, 798 S.E.2d 394, 397 (2016).

 As an initial matter, we address this Court’s jurisdiction to hear the present

case. The ALJ instructed the parties to file an appeal directly with this Court

pursuant to N.C. Gen. Stat. § 126-34.02 (2017). However, this case was originally

filed under N.C. Gen. Stat. § 126-5(h), which provides: “[i]n case of dispute as to

whether an employee is subject to the provisions of this Chapter, the dispute shall be

resolved as provided in Article 3 of Chapter 150B.” N.C. Gen. Stat. § 126-5(h) (2017).

Article 3 of Chapter 150B provides a right to a contested case hearing in an

administrative proceeding, in which the ALJ shall make a final decision or order.

N.C. Gen. Stat. §§ 150B-22, 150B-34 (2017). Article 4 of that Chapter in turn provides

“[a]ny party or person aggrieved by the final decision in a contested case . . . is

entitled to judicial review of the decision under this Article[.]” N.C. Gen. Stat. § 150B-

43 (2017). Thus, Chapter 150B, which governs contested case hearings before an

 -5-
 PRICKETT V. OSHR

 Opinion of the Court

ALJ, also provides a right of appeal of the ALJ’s final decisions. However, it is unclear

whether an appeal may be made directly to this Court.

 Even if N.C. Gen. Stat. § 126-5(h) does not provide a direct right of appeal to

this Court, “[t]his Court does have the authority pursuant to North Carolina Rule of

Appellate Procedure 21(a)(1) to ‘treat the purported appeal as a petition for writ of

certiorari’ and grant it in our discretion.” Luther v. Seawell, 191 N.C. App. 139, 142,

662 S.E.2d 1, 3 (2008) (quoting State v. SanMiguel, 74 N.C. App. 276, 277-78, 328

S.E.2d 326, 328 (1985)). Acknowledging the law is unclear in this area, the parties

have both requested that this appeal be treated as a petition for writ of certiorari. In

the interest of judicial economy, we consider OSHR’s brief as a petition for writ of

certiorari, grant the petition, and determine the merits of this appeal.

 We now address the merits of the case.

 At the outset, we note petitioner’s argument relies heavily on Wright v. N.C.

Office of State Human Res., No. COA18-276, 2019 WL 1283831 (N.C. Ct. App.

Mar. 19, 2019), an unpublished decision of this Court. Indeed, petitioner contends

Wright renders moot many of the issues in the present case. However, petitioner’s

reliance on our decision in Wright is misplaced for two reasons. First, as an

unpublished disposition, Wright is not binding precedent. Second, Wright is easily

distinguishable from the present case. There, the Court held the petitioner was a

career State employee on grounds not applicable here.

 -6-
 PRICKETT V. OSHR

 Opinion of the Court

 In Wright, the petitioner worked in a non-exempt position for almost twelve

consecutive months. Wright, 2019 WL 1283831, at *1. Just one day before the

petitioner would have attained career State employee status, she received a letter

informing her that her status was changed to exempt and that she was terminated.

Id. at *2. However, because the petitioner was notified of the exempt designation the

same day it took effect, OSHR violated N.C. Gen. Stat. § 126-5(g) (2017), which

required 10 working days prior written notice before placing an employee in an

exempt position. Reasoning that the petitioner would have attained career State

employee status had the statutory notice period been honored, we held the petitioner

in Wright was a career State employee at the time of her termination, and could thus

not be terminated without cause. Id. at *5. Furthermore, we held the General

Assembly’s placement of OSHR in the Governor’s Office for organizational purposes

did not grant the Governor authority to exempt the petitioner. Id. at *8. Importantly,

the facts of Wright differ from those of the present case, and compel us to reach a

different conclusion.

 We find that all three arguments advanced by OSHR have merit, and that

each, standing alone, would justify reversal. Nevertheless, in order to make the

record clear, we address each argument in turn below.

 A. Reversal of Exempt Status

 -7-
 PRICKETT V. OSHR

 Opinion of the Court

 On appeal, OSHR first argues petitioner was not a career State employee and

could thus be dismissed without cause because former Governor McCrory had no

authority in the first instance to change petitioner’s status to non-exempt. We agree.

 Section (d) of the SHRA grants the Governor the authority to designate as

exempt certain cabinet department positions, as provided below:

 (d) (1) Exempt Positions in Cabinet Department. -
 Subject to the provisions of this Chapter, which is
 known as the North Carolina Human Resources
 Act, the Governor may designate a total of 425
 exempt positions throughout the following
 departments and offices:
 a. Department of Administration.
 b. Department of Commerce.
 c. Repealed by Session Laws 2012-83, s. 7,
 effective June 26, 2012, and by Session
 Laws 2012-142, s. 25.2E(a), effective
 January 1, 2013.
 d. Department of Public Safety.
 e. Department of Natural and Cultural
 Resources.
 f. Department of Health and Human Services.
 g. Department of Environmental Quality.
 h. Department of Revenue.
 i. Department of Transportation.
 j. Repealed by Session Laws 2012-83, s. 7,
 effective June 26, 2012, and by Session
 Laws 2012-142, s. 25.2E(a), effective
 January 1, 2013.
 k. Department of Information Technology.
 l., m. Repealed by Session Laws 2016-126, 4th Ex.
 Sess., s. 7, effective December 19, 2016.
 n. Department of Military and Veterans
 Affairs.

 -8-
 PRICKETT V. OSHR

 Opinion of the Court

N.C. Gen. Stat. § 126-5(d)(1) (2017). Section (d) further grants the Governor the

authority to reverse the designation of a position the Governor designated exempt, as

follows:

 (d) (6) Reversal. - Subsequent to the designation of a
 position as an exempt position as hereinabove
 provided, the status of the position may be
 reversed and made subject to the provisions of this
 Chapter by the Governor or by an elected
 department head in a letter to the Director of the
 Office of State Human Resources, the Speaker of
 the North Carolina House of Representatives, and
 the President of the North Carolina Senate.

N.C. Gen. Stat. § 126-5(d)(6).

 In a letter dated 28 December 2016, then-Governor McCrory reversed

petitioner’s position from exempt to non-exempt effective 22 December 2016. In so

doing, then-Governor McCrory cited authority under N.C. Gen. Stat. § 126-5(d)(6).

However, the organization and language of N.C. Gen. Stat. § 126-5 as a whole reveals

the Governor’s power to reverse exempt status under N.C. Gen. Stat. § 126-5(d)(6)

only applies to cabinet department employees the Governor has power to designate

exempt in section (d). Section (d) begins by listing the departments in which the

Governor may designate exempt positions. N.C. Gen. Stat. § 126-5(d)(1). The Session

Law 2016-126 amendments to the SHRA removed OSHR, the department in which

petitioner was employed, from that list. 2016 N.C. Sess. Law ch. 126, § 7. In addition,

petitioner’s position was initially designated exempt not under N.C. Gen. Stat. § 126-

 -9-
 PRICKETT V. OSHR

 Opinion of the Court

5(d), but under N.C. Gen. Stat. § 126-5(c), which rendered petitioner statutorily

exempt as a “confidential assistant.” See N.C. Gen. Stat. § 126-5(c) (2017). Thus,

then-Governor McCrory had no authority to designate petitioner’s position as exempt

in the first instance; rather, petitioner’s position was designated exempt under a

different statutory provision. It follows, then, that he also had no authority to reverse

such designation. Accordingly, petitioner’s position was still exempt from the SHRA

at the time of his termination, and OSHR was well within its rights to terminate

petitioner at will.

 The ALJ correctly found “McCrory’s authority under N.C. Gen. Stat. § 126-

5(d)(6) was left intact during the General Assembly’s amendment of N.C. Gen. Stat.

§ 126-5 in Session Law 2016-126.” However, it failed to consider the limited

circumstances in which such authority may be exercised. We therefore hold the ALJ

erred in finding petitioner was a career State employee because the Governor had no

authority to reverse petitioner’s exempt status.

 B. Career Status Law Unconstitutional

 OSHR next argues the ALJ erred in finding petitioner was a career State

employee because the Career Status Law was inapplicable to petitioner and the ALJ’s

decision runs directly contrary to the superior court’s ruling in Cooper I. We agree.

 The Session Law 2016-126 amendments added the following subsection to the

SHRA:

 - 10 -
 PRICKETT V. OSHR

 Opinion of the Court

 Changes in Cabinet Department Exempt Position
 Designation. - If the status of a position designated exempt
 pursuant to subsection (d)(1) of this section is changed and
 the position is made subject to the provisions of this
 Chapter, an employee occupying the position who has been
 continuously employed in a permanent position for the
 immediate 12 preceding months, shall be deemed a career
 State employee as defined by G.S. 126-1.1(a) upon the
 effective date of the change in designation.

2016 N.C. Sess. Laws ch. 126, § 7, codified at N.C. Gen. Stat. § 126-5(d)(2c). A “career

State employee” is defined as one who “(1) [i]s in a permanent position with a

permanent appointment, and (2) [h]as been continuously employed by the State of

North Carolina or a local entity as provided in G.S. 126-5(a)(2) in a position subject

to the [SHRA] for the immediate 12 preceding months.” N.C. Gen. Stat. § 126-1.1(a)

(2017). Protected under the SHRA, career State employees may generally only be

fired for cause and after some due process. An employee who has not yet worked the

full twelve consecutive months in a non-exempt position is considered a probationary

State employee not subject to the SHRA, and can be terminated at will. N.C. Gen.

Stat. § 126-1.1(b). However, the Career Status Law effectively eliminated the

probationary period for employees designated exempt pursuant to subsection (d)(1)

whose exempt status was changed to non-exempt.

 Days after its enactment, Governor-elect Cooper challenged the Career Status

Law and other amendments in Cooper I. On 17 March 2017, the three-judge panel in

Cooper I found the Career Status Law unconstitutional. Noting that the Career

 - 11 -
 PRICKETT V. OSHR

 Opinion of the Court

Status Law, “by affording ‘career’ status to those employees who were exempt in the

prior administration, has also substantially limited the Governor’s ability to remove

them[,]” the panel concluded that the law “leave[s] the Governor ‘with little control

over the views and priorities of the officers’ holding key decision-making positions in

the executive branch.” Cooper I, 2017 WL 1433245, at *13. Because it “prevent[ed]

the Governor from taking care that the laws are faithfully executed,” the three-judge

panel permanently enjoined the Career Status Law and declared it unconstitutional.

Id. at *14. On 11 May 2017, this Court granted the Cooper I defendant’s motion to

dismiss their appeal, but denied the motion to vacate the lower court’s decision.

Petitioner’s contested case was heard and a final decision issued in the OAH on

11 September 2018, after Cooper I was decided.

 “It is a rule of statutory construction that a statute declared unconstitutional

is void ab initio and has no effect.” Am. Mfrs. Mut. Ins. Co. v. Ingram, 301 N.C. 138,

147, 271 S.E.2d 46, 51 (1980) (citations omitted). Indeed, as the Supreme Court has

recognized, “[a]n unconstitutional Act is not a law; it confers no rights; it imposes no

duties; it affords no protection; it creates no office; it is, in legal contemplation, as

inoperative as though it had never been passed.” Norton v. Shelby Cty., 118 U.S. 425,

442, 30 L. Ed. 178, 186 (1886). Nevertheless, noting that “[t]he actual existence of a

statute, prior to [ ] a determination [of unconstitutionality], is an operative fact and

may have consequences which cannot justly be ignored[,]” the Supreme Court has

 - 12 -
 PRICKETT V. OSHR

 Opinion of the Court

rejected a general rule of retroactivity. Chicot County Drainage District v. Baxter

State Bank, 308 U.S. 371, 374, 84 L. Ed. 329, 332-33 (1940). North Carolina courts

have followed suit, holding that, ultimately, “a test of reasonableness and good faith

is to be applied in determining the effect which a judicial decision that a statute is

unconstitutional will have on the rights and obligations of parties who have taken

action pursuant to the invalid statute.” Ingram, 301 N.C. at 149, 271 S.E.2d at 52.

 Here, petitioner was designated exempt pursuant to N.C. Gen. Stat. § 126-

5(c)(2), not N.C. Gen. Stat. § 126-5(d)(1). The Career Status Law conferred immediate

career State employee status only on “a position designated exempt pursuant to

subsection (d)(1) of [ ] section [(d)]” that was changed to non-exempt. 2016 N.C. Sess.

Laws ch. 126, § 7. Thus, it did not apply to petitioner. Accordingly, even if the

Governor’s reversal of petitioner’s status was valid, petitioner at most became a

probationary State employee in a non-exempt position. As such, he was required to

work in a non-exempt position for twelve consecutive months before he could achieve

career state status. As of 19 January 2017, the date petitioner was terminated,

petitioner had only served in a non-exempt position for 29 days. Therefore, he was

not a career State employee, and could be fired at will.

 Furthermore, even if, assuming arguendo, the Career Status Law did apply to

petitioner, it was found to be unconstitutional shortly after its enactment. Because

we denied the appellant’s motion to vacate the judgment, the reasoning stands. In

 - 13 -
 PRICKETT V. OSHR

 Opinion of the Court

addition, though petitioner argues Cooper I was not binding on the OAH, we disagree.

Chapter 150B grants the superior court authority to review final decisions of the

OAH, such as the one at issue here. See N.C. Gen. Stat. § 150B-43. Thus, the superior

court’s rulings with regard to disputes of whether an employee is subject to the SHRA

are binding on the OAH. Cooper I concerned a provision directly related to whether

an employee was subject to the SHRA. We therefore hold its decision was binding on

the OAH.

 In addition, while North Carolina courts have “retreated from the absolute rule

that an unconstitutional statute is a nullity,” we hold the Career Status Law is null

under the Ingram test. Ingram, 301 N.C. at 149, 271 S.E.2d at 52. Pursuant to

Ingram, we will not retroactively apply a holding of unconstitutionality unless the

parties who relied on the unconstitutional statute acted unreasonably or in bad faith.

Here, while it may have been lawful for then-Governor McCrory to rely on the Career

Status Law when he changed petitioner’s status to non-exempt, and thereby

attempted to confer immediate career status on petitioner, we find no support in the

record to persuade us that he acted reasonably or in good faith.

 Only days prior to the end of his term, then-Governor McCrory acted to prevent

the removal of exempt employees hired under his administration by making them

non-exempt, with the expectation that the Career Status Law would protect them

from being fired without cause by the next Governor. This action was clearly an

 - 14 -
 PRICKETT V. OSHR

 Opinion of the Court

attempt to permanently install employees hired by then-Governor McCrory—who

had been defeated in his bid to retain his seat—who may not be favorable to the

incoming administration. Thus, then-Governor McCrory’s actions taken pursuant to

the Career Status Law would serve to thwart the duly elected Governor’s authority

to hire employees to carry out the will of the people. Therefore, these unreasonable

actions done under this unconstitutional statute should not be allowed to stand.

Moreover, retroactively applying the Cooper I decision will not result in untoward

consequences. Those employees whose positions then-Governor McCrory changed to

non-exempt are, though unable to attain immediate career status, still eligible for

career status upon their completion of the twelve month probationary period, as has

been the policy for years.

 C. 10-Day Notice

 Finally, OSHR argues that if petitioner was entitled to a 10-day notice period

upon reversal of his status from non-exempt back to exempt, any notice violation was

procedural in nature, not substantive, and thus the appropriate remedy is not

reinstatement of petitioner. We agree.

 Pursuant to N.C. Gen. Stat. § 126-5(g), “No employee shall be placed in an

exempt position without 10 working days prior written notification that such position

is so designated.” N.C. Gen. Stat. § 126-5(g) (2017).

 - 15 -
 PRICKETT V. OSHR

 Opinion of the Court

 Because we have held that even if petitioner was a non-exempt employee the

Career Status Law did not apply to him, we also hold that even if there was a violation

of the 10-day notice period, it would not have been substantive. Had the notice period

been honored, petitioner still would not have had a protected property interest in his

position. The Career Status Law did not apply to petitioner, and even if it did, it has

been struck down as unconstitutional and, as discussed supra, is void ab initio. Thus,

petitioner at most was a probationary State employee at the time of his termination.

As such, he was required to work in a non-exempt position for twelve consecutive

months before he could attain career State employee status and thereby gain a

protected property interest in his continued employment. See N.C. Gen. Stat. § 126.1-

1. However, petitioner only worked in a non-exempt position for 29 days before he

was terminated. Even if OSHR had waited 10 working days to terminate him,

petitioner would not have attained career State employee status in that time period,

as he still had eleven more months to go. Accordingly, any violation of the 10-day

notice period was procedural in nature, not substantive, and reinstatement was not

the appropriate remedy.

 III. Conclusion

 For the foregoing reasons, we reverse the decision of the OAH.

 REVERSED.

 Judges COLLINS and HAMPSON concur.

 - 16 -