D. M. GLENN, JR., AND WIFE, ANNIE GLENN, v. THE BOARD OF EDUCATION OF MITCHELL COUNTY AND THE TOWN OF SPRUCE PINE.

(Filed 14 October, 1936.)

1. **Statutes A b—Statute closing certain specified roads held void as being special act in violation of Art. II, sec. 29.**

   Part of land in a private development was added to the playground of a public school. The General Assembly, by private act (ch. 72, Private Laws of 1933), declared that certain roads dedicated in the registered plot of the development were no longer needed, and declared that the roads should be closed and added to the playground space for the school. *Held:* The act is void as being a private or special act inhibited by Art. II, sec. 29, of the State Constitution.

2. **Estoppel B a—**

   Defendant town relied upon a private act closing certain streets because they were "no longer needed for public purposes," as the basis for its demurrer. *Held:* Defendant is estopped from maintaining its conflicting contention that the streets in question had never been opened.

**3. Eminent Domain C a—**

　　Owners of land having an easement over contiguous streets or roads cannot be deprived of their easement, even for a public purpose, without the payment of just compensation.

**4. Constitutional Law B c—**

　　The courts have the power and duty to declare an act of the General Assembly unconstitutional when the question is properly presented and the act is clearly unconstitutional.

**5. Statutes A e—**

　　An act will not be declared unconstitutional unless it is clearly so, and all reasonable doubt will be resolved in favor of its validity.

APPEAL by plaintiffs from *Sink, J.,* at Spring Term, 1936, of MITCHELL. Reversed.

This was an action brought by plaintiffs against defendants in which they allege that defendants have closed up certain streets in the town of Spruce Pine, N. C., used by the public and over which they have a right of ingress and egress to certain property owned by them. Plaintiffs further allege: "That by reason of said wrongful obstruction of said streets by the defendants, as hereinbefore alleged, the plaintiffs have been put to great inconvenience in passing to and from their home and property in going and returning from the business section of Spruce Pine and other sections of said town, and thereby hindered (and to a great extent, denied) the full and usual enjoyment of their home and property, and thereby greatly damaged, to wit, in the sum of $500.00. Wherefore plaintiffs pray judgment against the defendants in the said sum of $500.00 as damages for the injury caused plaintiffs as above alleged; that said defendants be required to open said streets for public use, and to put same in as good condition for travel as when obstructed, as hereinbefore alleged; that said defendants be perpetually enjoined from further obstructing said streets, or any other streets in said 'South Spruce Pine,' and for such other and further relief as to the court the plaintiffs may seem entitled, together with the cost in this behalf expended."

The defendant town of Spruce Pine demurred to the complaint. The defendant, the Board of Education of Mitchell County, denied the material allegations of the complaint. "And as a further defense to this action, this answering defendant says and alleges, that the Riverside Drive and extensions of Tappan and Peterson streets coming within the boundary of the Harris High School property were closed by act of the Legislature of North Carolina, chapter 72, Private Laws of 1933, which act is hereby pleaded in bar of plaintiffs' right of action."

The act in question, chapter 72, Private Laws 1933, is as follows: *"Whereas,* a large portion of the school grounds of Harris High School,

comprising the northwestern section of the campus and including the present athletic field and the adjacent playgrounds, was originally a portion of a subdivision, and as such was composed of certain lots, streets, and extension of a road known as Riverside Drive; and *whereas,* later this portion was added by purchase to the original campus of Harris High School, for the purpose of enlarging play facilities and for the children attending said school; and *whereas,* the sections of the street extending from Peterson Street and Tappan Street to the original campus road and line are no longer needed for public purposes, a new roadway having been constructed from the school buildings to the State Highway on the southwestern side of the campus; and *whereas,* Riverside Drive, after a period of more than ten years, has not been officially laid off and opened up to the public; and *whereas,* only one property holder could have any personal interest in the opening of this road, and an adequate roadway can be secured for him on the southern side of the campus: *Therefore, the General Assembly of North Carolina do enact:* Section 1. That Riverside Drive and extensions of Peterson and Tappan streets on the campus of said school are hereby declared closed and the area which would be occupied by them is hereby reserved for playground space for the children attending said school. Sec. 2. That all laws and clauses of laws in conflict with this act are hereby repealed. Ratified this the 20th day of March, A.D. 1933."

The judgment of the court below is as follows: "The above entitled action coming on for hearing and being heard before his Honor, H. Hoyle Sink, Judge presiding, on a demurrer filed by the defendant town of Spruce Pine, and on a motion to dismiss the action, filed by the defendant, the Board of Education of Mitchell County, by virtue of the special act of the General Assembly set up in the answer of the defendant, to wit: Chapter 72, Private Laws of 1933, and it having been admitted in the argument on the hearing of said demurrer and motion that if said act is valid that same constitutes a bar to plaintiffs' cause of action, as alleged in the complaint, and the court being of the opinion that said act is valid, and a bar to plaintiffs' cause of action, it is therefore considered, ordered, and adjudged by the court that the demurrer of the defendant town of Spruce Pine, and the motion of the defendant Board of Education of Mitchell County, be and the same is hereby sustained, and this action dismissed. It is further ordered that the cost of this action be taxed against the plaintiffs. (Signed) H. Hoyle Sink, Judge presiding."

To the foregoing judgment the plaintiffs in apt time excepted, assigned error, and appealed to the Supreme Court.

*J. W. Ragland for plaintiffs.*
*McBee & McBee and M. L. Wilson for defendants.*

CLARKSON, J. The court below held the act in controversy valid and sustained the contentions of defendants, and dismissed the action. We cannot so hold.

Article II, sec. 29, of the Constitution of North Carolina, in part, is as follows: "The General Assembly shall not pass any local, private, or special act or resolution, . . . changing the names of cities, towns, and townships; authorizing the laying out, opening, altering, maintaining, or discontinuing of highways, streets, or alleys; relating to ferries or bridges," etc.

In *Day v. Comrs.*, 191 N. C., 780 (783-4), it is said: "The first section of the act before us commands the commissioners of Surry and Yadkin counties to construct one bridge across the Yadkin River at a place which is pointed out and particularly defined; it is direct legislation addressed to the accomplishment of a single designated purpose at a 'specific spot'; it is therefore a local and special act, and as such is expressly prohibited by Art. II, sec. 29, of the Constitution. In further elucidation of this provision the following additional cases may be consulted: *Trustees v. Trust Co.*, 181 N. C., 306; *Sechrist v. Comrs.*, ibid., 511; *Robinson v. Comrs.*, 182 N. C., 590; *Galloway v. Board of Education*, 184 N. C., 245." *Sanitary Dist. v. Pruden*, 195 N. C., 722 (727).

The town of Spruce Pine contends that "the said Riverside Drive and Tappan Street, authorized to be closed by chapter 72, had never been accepted by the town of Spruce Pine and had never been opened by anyone and existed only on the map of said subdivision, and was of no use to the plaintiffs in this action as a street, nor to the public, and for more than twenty years the ground now occupied by the Harris High School under and by virtue of said act as a playground has not been used by the plaintiffs nor the public as a street or passageway, but is necessary as a playground for said high school."

The town of Spruce Pine cannot "blow hot and cold in the same breath." It relies on the private act which it and the board of Mitchell County contends is a good defense to this action. The act distinctly designates it as a street, as follows: *"Whereas,* the sections of the street extending from Peterson Street and Tappan Street to the original campus road and line are no longer needed for public purposes," etc.

It is important that the schools should have playgrounds, and this Court has recently decided that in thickly settled cities parks, playgrounds, etc., are a necessary expense. *Atkins v. Durham, ante,* 295. It was admitted on the argument that if the act was constitutional it "bottled up" plaintiffs. It is a fundamental principal that no man's land can be taken for public purposes without "just compensation." If plaintiffs have an easement in this Riverside Drive, it cannot be taken except it be condemned, as provided by law, and "just compensation"

paid, or purchased from plaintiffs. *Hiatt v. Greensboro*, 201 N. C., 515. This law is recognized in all civilized lands and is imbedded in our jurisprudence as firm as the everlasting hills and mountains which can be seen from the location in controversy.

In *Robinson v. Barfield*, 6 N. C., 392 (420), decided July Term, 1818, we find this strong language: "Had the Legislature any right or power to take the lands without the consent of the lessors of the plaintiff, in whom the fee simple vested, and without compensation rendered, give them to General Thomas Brown and his heirs; or, in other words, is the act of the Assembly, passed in the year 1788, *confirming the title of Gen. Brown, of any force or effect?* I am of opinion the act is a nullity, and does not affect the rights of the lessors of the plaintiff. The Constitution declares that the Legislative, Executive, and Supreme Judicial powers of government ought to be forever separate and distinct from each other. The transfer of property from one individual, who is the owner, to another individual, is a *judicial* and not a *legislative* act. When the Legislature presumes to touch *private property,* for any other than public purposes, and then only in case of necessity, and rendering full compensation; it will behoove the judiciary to check its eccentric course, by refusing to give any effect to such acts: Yes, let them remain as dead letters on the statute book. Our oath forbids us to execute them, as they infringe upon the principles of the *Constitution.* Miserable would be the condition of the people if the judiciary was bound to carry into execution every act of the Legislature, without regarding the paramount rule of the Constitution."

In *Lowe v. Harris*, 112 N. C., 472, at p. 480, citing a wealth of authorities, it is said: "Philosophical writers upon law generally in all countries, however, deny the power of the Legislature to pass statutes that impair a right acquired under the law in force at the time of its enactment, and insist that the right to repeal existing laws does not carry with it the power to take away property, the title to which vested under and is protected by them. But the Legislature of North Carolina is restrained by Article I, sec. 10, of the Constitution of the United States, and Article I, sec. 17, of the Constitution of North Carolina, not only from passing any law that will divest title to land out of one person and vest it in another (except where it is taken for public purposes after giving just compensation to the owner), but from enforcing any statute which would enable one person to evade or avoid the binding force of his contracts with another, whether executed or executory." *Booth v. Hairston*, 193 N. C., 278 (284).

It is well settled in this State that the courts have the power, and it is their duty in proper cases, to declare an act of the General Assembly unconstitutional—but it must be plainly and clearly the case. If there

is any reasonable doubt, it will be resolved in favor of the lawful exercise of their powers by the representatives of the people. It has been frequently said that this State was the first in the United States to declare an act of the General Assembly unconstitutional (*Bayard v. Singleton,* 1 N. C., 42 [45]), but other states claim this distinction also. Virginia claims to be the first—*Commonwealth v. Caton et al.,* reported in 4 Call, 5 (November, 1782). In Two Centuries' Growth of American Law, 1701-1901 (Yale Law School), we find the following, at p. 24: "In the case of *Holmes v. Walton* (N. J.), was adjudged to be void, because contrary to the Constitution. The date of this judgment, although formerly put later, it seems now to be established was 1780. . . . (Note) *Commonwealth v. Caton,* in Virginia, 1782. See 4 Call's Reports, 5; Thayer's Cases on Constitutional Law, I. 55; *The Symsbury Case,* in Connecticut, 1784-5; Kirby's Reports, 444, 447, 452. *Trevett v. Weeden,* in Rhode Island, 1786; *Bayard v. Singleton,* in North Carolina (1787). U. S. Supreme Court in *Marbury v. Madison,* 1 Cranch, 137 (Feby. Term, 1803)."

For the reasons given, the judgment of the court below is
Reversed.