CITY OF NEW BERN, A NORTH CAROLINA MUNICIPAL CORPORATION v. THE NEW BERN-CRAVEN COUNTY BOARD OF EDUCATION, A BODY CORPORATE UNDER THE LAWS OF THE STATE OF NORTH CAROLINA; THE TRUSTEES OF CRAVEN COMMUNITY COLLEGE, A BODY CORPORATE UNDER THE LAWS OF THE STATE OF NORTH CAROLINA; CRAVEN REGIONAL MEDICAL AUTHORITY, A PUBLIC BODY AND A BODY CORPORATE AND POLITIC WHICH HAS ITS PRINCIPAL OFFICE AND PLACE OF BUSINESS IN THE CITY OF NEW BERN, CRAVEN COUNTY, NORTH CAROLINA; THE COUNTY OF CRAVEN, A BODY CORPORATE UNDER THE LAWS OF THE STATE OF NORTH CAROLINA; AND MICHAEL EASLEY, ATTORNEY GENERAL OF THE STATE OF NORTH CAROLINA

No. 5PA94

(Filed 9 December 1994)

1. **Building Codes and Regulations § 46 (NCI4th); Constitutional Law § 24 (NCI4th)— enforcement of building codes—transfer of responsibility from city to county—local acts relating to health and sanitation—unconstitutionality**

Acts which transferred the responsibility for the administration and enforcement of building codes in New Bern from the City of New Bern to Craven County for all buildings associated with

CITY OF NEW BERN v. NEW BERN-CRAVEN CO. BD. OF EDUC.

[338 N.C. 430 (1994)]

the New Bern-Craven County Board of Education, the Craven Community College, and the Craven Regional Medical Center were local acts since they are in conflict with N.C.G.S. § 160A-411; there is no rational basis that justifies the separation of New Bern from all other cities in North Carolina for special legislative attention regarding the designation of an appropriate building inspections department; and the acts thus create an unreasonable classification. Furthermore, these local acts violate N.C. Const. art. II, § 24(a) because the shifting of responsibility for inspections pursuant to the State Building Code affects health and sanitation.

**Am Jur 2d, Buildings § 2; Constitutional Law §§ 319-321.**

2. **Constitutional Law § 24 (NCI4th)— building code inspections—unconstitutionality of local acts—prospective application of ruling**

The trial court did not err by applying prospectively only its ruling that acts which transferred responsibility for building code inspections of certain buildings in a city from the city to the county were unconstitutional local acts since there was no evidence of bad faith on the part of defendants, their reliance on the acts was reasonable, and inspections performed by the county cannot be undone at this juncture without the risk of untoward consequences.

**Am Jur 2d, Constitutional Law §§ 319-321.**

3. **Declaratory Judgment Actions § 26 (NCI4th)— declaratory judgment action—statutes held unconstitutional—equal apportionment of costs**

The trial court did not abuse its discretion by apportioning the costs of a declaratory judgment action in which statutes were held to be unconstitutional equally between· plaintiff city and each defendant.

**Am Jur 2d, Declaratory Judgments §§ 253-255, 268.**

On appeal of right pursuant to N.C.G.S. 7A-30(1) and on discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 113 N.C. App. 98, 437 S.E.2d 655 (1993), affirming a judgment entered 24 February 1992 by Butterfield, J., in Superior Court, Craven County. Heard in the Supreme Court 12 October 1994.

*Ward, Ward, Willey & Ward, by A.D. Ward, for plaintiff-appellee.*

*Henderson, Baxter & Alford, P.A., by David S. Henderson & Benjamin G. Alford, for defendant-appellant The New Bern-Craven County Board of Education; Sumrell, Sugg, Carmichael & Ashton, P.A., by Fred M. Carmichael and Rudolph A. Ashton, III, for defendant-appellant Craven Regional Medical Authority; Sumrell, Sugg, Carmichael & Ashton, P.A., by James R. Sugg, for defendant-appellant The County of Craven; Ward & Smith, P.A., by Kenneth R. Wooten and Anne D. Edwards, for defendant-appellant The Trustees of Craven Community College.*

WHICHARD, Justice.

On 8 November 1988 plaintiff-appellee, the City of New Bern [hereinafter "the City"], filed a declaratory judgment action in Superior Court, Craven County, seeking to have three statutes governing the inspection of buildings in New Bern declared unconstitutional. On 16 January 1989 the trial court (Reid, J.) entered an order dismissing the action with prejudice, ruling that no justiciable controversy existed that would permit the court to take jurisdiction over the matter. The City appealed to the Court of Appeals. This Court allowed the City's petition for discretionary review prior to determination by the Court of Appeals, reversed the dismissal of the lawsuit, and remanded it to the Superior Court, Craven County, for further proceedings. *City of New Bern v. New Bern-Craven Co. Bd. of Ed.*, 328 N.C. 557, 402 S.E.2d 623 (1991).

On 28 October 1991 the City moved for judgment on the pleadings. At the 4 November 1991 Civil Session of Superior Court, Craven County, Judge G.K. Butterfield, Jr., sitting without a jury, heard the matter. In a judgment filed 24 February 1992, Judge Butterfield ruled that the three statutes were unconstitutional, that the judgment applied prospectively only, and that costs would be apportioned equally between the City and each defendant. The New Bern-Craven County Board of Education, the Trustees of Craven Community College, the Craven Regional Medical Authority, and the County of Craven [hereinafter "defendants" collectively] appealed to the Court of Appeals, which affirmed the trial court. The Attorney General, who was also a defendant, did not appeal. On 25 January 1994 defendants filed a notice of appeal as to constitutional questions and a petition

CITY OF NEW BERN v. NEW BERN-CRAVEN CO. BD. OF EDUC.

[338 N.C. 430 (1994)]

for discretionary review. On 3 March 1994 this Court denied the City's motion to dismiss the appeal for lack of a substantial constitutional question and allowed defendants' petition for discretionary review.

[1] Defendants argue that the three acts are constitutional because they are not local and, if local, they do not relate to health or sanitation and thus are not prohibited by Article II, Section 24 of the North Carolina Constitution. We disagree and accordingly affirm the Court of Appeals on this issue.

The City brings forward two additional issues pursuant to Rule 16(a) of the North Carolina Rules of Appellate Procedure. It argues that the trial court unconstitutionally applied its judgment prospectively only. We disagree and accordingly affirm the Court of Appeals on this issue. The City also argues that the trial court abused its discretion by apportioning costs equally between the City and each defendant. The Court of Appeals did not address this issue expressly but held that there was no merit in the City's argument. We find no abuse of discretion in the trial court's judgment and accordingly affirm the Court of Appeals on this issue.

On 26 June 1986 the legislature enacted "An Act to Provide for Enforcement of Building and Other Codes by the County of Craven as to Property of the New Bern-Craven County Board of Education Rather Than by Cities in that County," which provides in pertinent part:

Section 1. Craven County shall have the exclusive jurisdiction as against any city as defined by G.S. 160A-1 for the administration and enforcement of all laws, statutes, code requirements and all other applicable regulations promulgated by the State or any city respecting building, construction, fire and safety codes as the same relate to or are legally applicable to the New Bern-Craven County Board of Education.

1986 N.C. Sess. Laws ch. 805, § 1.

On 12 June 1987 the legislature enacted a similar act regarding the enforcement of the building code as it relates to Craven Community College. The act was entitled "An Act to Provide for Enforcement of Building and Other Codes by the County of Craven as to Property of Craven Community College Rather Than by Cities in that County," and provides in pertinent part:

> Section 1. Craven County shall have exclusive jurisdiction as against any city as defined by G.S. 160A-1 for the administration and enforcement of all laws, statutes, code requirements, and all other applicable regulations adopted by the State or any city respecting building, construction, fire, and safety codes as the same relate to or are legally applicable to the Board of Trustees of Craven Community College.

1987 N.C. Sess. Laws ch. 341, § 1.

On 23 June 1988 the legislature enacted a similar act with regard to the Craven Regional Medical Center. It was entitled "An Act to Provide for Enforcement of Building and Other Codes by the County of Craven as to Property Owned or Leased by the Craven Regional Medical Center Rather Than by Cities in that County," and provides in pertinent part:

> Section 1. Craven County shall have exclusive jurisdiction as against any city as defined by G.S. 160A-1 for the administration and enforcement of all laws, statutes, code requirements and all other applicable regulations promulgated by the State or any city respecting building, construction, fire and safety codes as the same relate to or are legally applicable to any property owned or leased by the Craven Regional Medical Center.

1987 N.C. Sess. Laws ch. 934, § 1.

As a result of these three acts, the county, rather than the City, performed the inspections of those buildings within the city limits that were associated with the Board of Education, the Craven Regional Medical Center, and Craven Community College. Prior to the acts, the City performed these inspections pursuant to N.C.G.S. § 160A-411.

Defendants argue that these acts are general rather than local and therefore are not prohibited by the North Carolina Constitution. The controlling provision is Article II, Section 24 of the North Carolina Constitution, which states in pertinent part:

> (1) *Prohibited subjects.* The General Assembly shall not enact any local, private, or special act or resolution:
>
> (a) Relating to health, sanitation, and the abatement of nuisances;
>
> . . . .
>
> (2) *Repeals.* Nor shall the General Assembly enact any such local, private, or special act by the partial repeal of a general law;

but the General Assembly may at any time repeal local, private, or special laws enacted by it.

(3) *Prohibited acts void.* Any local, private, or special act or resolution enacted in violation of the provisions of this Section shall be void.

(4) *General laws.* The General Assembly may enact general laws regulating the matters set out in this Section.

N.C. Const. art. II, § 24. Thus, under this section if the acts are general, they are constitutional, but if they are local and relate to a prohibited subject—such as health, sanitation, or the abatement of nuisances—they are void.

Our first step therefore is to determine whether the acts are local or general. As we review these acts, we are mindful that " '[e]very presumption is in favor of the validity of an act of the Legislature, and all doubts are resolved in support of the act,' " *Lowery v. School Trustees*, 140 N.C. 33, 40, 52 S.E. 267, 269 (1905) (quoting Jabez G. Sutherland, *Statutes and Statutory Construction* § 82 (John Lewis ed., 2d ed. 1904)); however, we have the power and the duty to declare a legislative act unconstitutional when such is " 'plainly and clearly the case.' " *Town of Emerald Isle v. State of N.C.*, 320 N.C. 640, 647, 360 S.E.2d 756, 761 (1987) (quoting *Glenn v. Board of Education*, 210 N.C. 525, 529, 187 S.E. 781, 784 (1936)); *see also Kornegay v. Goldsboro*, 180 N.C. 441, 445-46, 105 S.E. 187, 189 (1920) (discussing scope of judicial review of legislative acts).

Since the adoption of Article II, Section 24 (then Section 29) by the legislature in 1915 and its approval by the voters in the election of 1916, this Court has developed methods of analysis for determining whether an act is local or general. The first method involved the consideration of the number of counties in the state affected by the statute. If a majority were in the class at which the legislation was directed, the law was deemed general. *See, e.g., State v. Dixon*, 215 N.C. 161, 165, 1 S.E.2d 521, 523 (1939) (holding statute that applied to less than half the counties to be local); *In re Harris*, 183 N.C. 633, 636-37, 112 S.E. 425, 426-27 (1922) (holding statute that affected 56 of the 100 counties to be general).

This Court next developed the reasonable classification method of analysis, which was first applied in *McIntyre v. Clarkson*, 254 N.C. 510, 119 S.E.2d 888 (1961), and which seeks to determine whether " 'any rational basis reasonably related to the objective of the legisla-

tion can be identified which justifies the separation of units of local government into included and excluded categories.' " *Adams v. Dept. of N.E.R. and Everett v. Dept. of N.E.R.*, 295 N.C. 683, 691, 249 S.E.2d 402, 407 (1978) (quoting Joseph S. Ferrell, *Local Legislation in the North Carolina General Assembly*, 45 N.C. L. Rev. 340, 391 (1967)). The act is general if a rational basis exists and it applies uniformly to those in the separated class; if not, it is local. *See id.* at 690-91, 249 S.E.2d at 407.

Our most recent decision involving the general-local law distinction is *Town of Emerald Isle v. State of N.C.*, 320 N.C. 640, 360 S.E.2d 756 (1987). In *Emerald Isle* this Court addressed whether an act that established a public pedestrian beach access facility in Bogue Point was a local act. We there applied a general public interest method of analysis, which focuses on "the extent to which the act in question affects the general public interests and concerns." *Id.* at 651, 360 S.E.2d at 763. In discussing our choice of method, we stated:

> We find that the traditional reasonable classification analysis previously applied by this Court in determining what constitutes a "local act" in *Adams* is ill-suited to the question presented in this case, since by definition a particular public pedestrian beach access facility must rest in but one location. Furthermore, assuming the legislature acts within its authority when it establishes such facilities by legislative action, we find it unnecessary to require it to do so by crafting tortured classifications.

*Id.* at 650, 360 S.E.2d at 762. These statements do not suggest that the general public interest method of analysis replaces the reasonable classification method in every case. Rather, we recognized "that no exact rule or formula capable of constant application can be devised for determining in every case whether a law is local, private or special or whether general." *Id.* (quoting *McIntyre*, 254 N.C. at 517, 119 S.E.2d at 893). In *Emerald Isle* we departed from the reasonable classification method of analysis because the act at issue was site-specific, that is, the act applied to a specific portion of land and to a specific facility that could be located only on that land. In the case before us, the acts shift the responsibility for enforcing the building code from the City to the county. Such a legislated change could be effected as easily in New Bern as in any other city in the state. These acts therefore are not site-specific, and thus the *Emerald Isle* general public-interest method of analysis is unsuited to this case.

Under a reasonable classification analysis,

[a] general law defines a class which reasonably warrants special legislative attention and applies uniformly to everyone in the class. On the other hand, a local act unreasonably singles out a class for special legislative attention or, having made a reasonable classification, does not apply uniformly to all members of the designated class.

*Adams,* 295 N.C. at 690-91, 249 S.E.2d at 407. Defendants argue that New Bern required special legislative attention because the City and the county were unable to agree on which entity should perform the inspections of the buildings covered by the three acts. This inability to agree, they contend, provides a rational basis for the legislature's objective in enacting these acts, that of designating Craven County to perform the inspections. We disagree.

The legislature by general law has provided which entities are authorized to perform building inspections and how those duties may be assigned. As to cities, the legislature enacted N.C.G.S. § 160A-411, which provides in pertinent part:

Every city in the State is hereby authorized to create an inspection department, and may appoint one or more inspectors . . . . Every city shall perform the duties and responsibilities set forth in G.S. 160A-412 either by: (i) creating its own inspection department; (ii) creating a joint inspection department in cooperation with one or more other units of local government, pursuant to G.S. 160A-413 or Part 1 of Article 20 of this Chapter; (iii) contracting with another unit of local government for the provision of inspection services pursuant to Part 1 of Article 20 of this Chapter; *or (iv) arranging for the county in which it is located to perform inspection services within the city's jurisdiction as authorized by G.S. 160A-413 and G.S. 160A-360. . . .*

*In the event that any city shall fail to provide inspection services by the date specified above or shall cease to provide such services at any time thereafter, the Commissioner of Insurance shall arrange for the provision of such services, either through personnel employed by his department or through an arrangement with other units of government.*

N.C.G.S. § 160A-411 (1994) (emphasis added); *see also* N.C.G.S. § 153A-351 (1991) (providing similar procedures for county inspections). This statute does not mandate that the City and the county

CITY OF NEW BERN v. NEW BERN-CRAVEN CO. BD. OF EDUC.

[338 N.C. 430 (1994)]

must agree regarding the provision of inspection services; rather, it provides the options available to the City in determining who shall perform the inspections, one of which is arranging for the county to perform them. Further, if the City fails to provide inspection services via any of the four options, the statute dictates that the Commissioner of Insurance shall arrange for the provision of the services. The legislature does not need to intervene in the process should the county and the City fail to agree; instead, the legislature has provided that the Commissioner of Insurance shall do so should the City fail to follow the requirements of the statute.

Based on this statute, as well as on the facts of this case, we perceive no rational basis that justifies the separation of New Bern from all other cities in North Carolina for special legislative attention regarding the designation of an appropriate inspection department. The acts thus create an unreasonable classification. They therefore are local acts.

Defendants argue that even if the acts are local, they are not prohibited by the North Carolina Constitution because they do not relate to "health, sanitation, and the abatement of nuisances." N.C. Const. art. II, § 24(a). Defendants further contend that because the acts are not prohibited by the Constitution, the legislature acted within its plenary powers to enact local laws pursuant to Article VII, Section 1 of the North Carolina Constitution, which provides in pertinent part:

> The General Assembly shall provide for the organization and government and the fixing of boundaries of counties, cities and towns, and other governmental subdivisions, and, *except as otherwise prohibited by this Constitution*, may give such powers and duties to counties, cities and towns, and other governmental subdivisions as it may deem advisable.

N.C. Const. art. VII, § 1 (emphasis added). This issue therefore turns on whether the Constitution otherwise prohibits these acts by virtue of Article II, Section 24. *See State ex rel. Martin v. Preston*, 325 N.C. 438, 448, 385 S.E.2d 473, 478 (1989) ("All power which is not expressly limited by the people in our State Constitution remains with the people, and an act of the people through their representatives in the legislature is valid unless prohibited by that Constitution."). If so, the legislature's ability to ascribe powers and duties to specific cities and counties does not extend to these acts and they are void. N.C. Const. art. II, § 24(3).

The acts at issue are in conflict with N.C.G.S. § 160A-411 in that under them the City no longer "shall perform the duties and responsibilities [of an inspection department]." Prior to these acts, the City performed the inspections and had the option to request that the board of county commissioners of Craven County "exercise their powers within part or all of the city's jurisdiction, . . . until [the City] officially withdraws its request." N.C.G.S. § 160A-413 (1994). Now the City has no options under the acts and cannot designate an inspection department to perform the inspections. Consequently, our concern is two-fold: first, whether inspections pursuant to the North Carolina State Building Code [hereinafter "the Code"] affect any of the prohibited subjects of health, sanitation, or the abatement of nuisances; and second, whether the shifting of responsibility for those inspections consequently affects health, sanitation, or the abatement of nuisances.

The legislature empowered the Building Code Council to prepare and adopt a North Carolina State Building Code, N.C.G.S. § 143-138(a) (1993), and provided that "[a]ll regulations contained in the North Carolina State Building Code shall have a reasonable and substantial connection with the public health, safety, morals, or general welfare, and their provisions shall be construed liberally to those ends." *Id.*(c) The legislature mandated that the Code should cover specified areas of buildings and their construction, including, among others, location, height, lighting, ventilation, permissible materials, elevators, and plumbing. In addition, the Council may adopt "other reasonable rules pertaining to the construction of buildings and structures and the installation of particular facilities therein as may be found reasonably necessary for the protection of the occupants of the building or structure, its neighbors, and members of the public at large." *Id.*(b). The Code also may regulate activities and conditions "that pose dangers of fire, explosion, or related hazards." *Id.* These fire prevention provisions "shall be considered the minimum standards necessary to preserve and protect public health and safety." *Id.* The importance the legislature places on adherence to and enforcement of the Code is reflected by its criminalization of violations of the Code. *See id.*(h) (code violations are misdemeanors resulting in fines).

The Building Code Council has followed the mandate of the legislature by creating a detailed code that covers all the specified areas. That part of the Code that addresses administration and enforcement states that its purpose is "to provide [for] the public safety, health and general welfare by providing for the administration and enforcement

of the North Carolina State Building Code." IA N.C. State Bldg. Code § 1.2.1 (1993). That part of the Code that addresses fire prevention states that its provisions "shall apply to all buildings, structures, premises and conditions that pose danger of fires, explosions, or related hazards within this jurisdiction." V N.C. State Bldg. Code § 102. That part of the Code addressing plumbing describes its principles as "basic goals in environmental sanitation worthy of accomplishment through properly designed, acceptably installed, and adequately maintained plumbing systems. Some of the details of a plumbing construction must vary, but the basic *sanitary* and safety principles are the same." II N.C. State. Bldg. Code § 301 (emphasis added). Some of the aims informing the plumbing regulations are the provision of "adequate, safe and potable water" and "adequate sanitary facilities" in premises intended for human occupancy. *Id.* §§ 301.1 & 301.3.

Thus, both the legislature's directions for the creation of the Code and the Building Code Council's stated purposes for the different inspections under the Code evince an intent to protect the health of the general public. The Code regulates plumbing in an effort to maintain sanitary conditions in the buildings and structures of this state and thus directly involves sanitation, and consequently the protection of the health of those who use the buildings. The enforcement of the fire regulations protects lives from fire, explosion and health hazards. We find the conclusion that inspections pursuant to the Code affect health and sanitation inescapable.

The acts in question alter the legislative directive of N.C.G.S. § 160A-411 that the City shall determine who will perform the inspections under the Code. Those who perform the inspections have the duty and responsibility:

to enforce within their territorial jurisdiction State and local laws relating to

(1) The construction of buildings and other structures;

(2) The installation of such facilities as plumbing systems, electrical systems, heating systems, refrigeration systems, and air-conditioning systems;

(3) The maintenance of buildings and other structures in a safe, *sanitary, and healthful* condition;

(4) Other matters that may be specified by the city council.

N.C.G.S. § 160A-412 (1994) (emphasis added). This Court previously has addressed similar local legislation and concluded that the shifting of responsibility for enforcement of laws affecting the health of the public was barred under Article II, Section 29 (now Section 24) of the Constitution. In *Sams v. Comrs. of Madison*, 217 N.C. 284, 7 S.E.2d 540 (1940), this Court considered whether a county physician and quarantine officer who had been elected by the county board of health could sue the Board of County Commissioners of Madison County for payment of his salary. The board of county commissioners denied liability, arguing that the local act creating the Madison County Board of Health was unconstitutional under Article II, Section 29 (now Section 24). The local law, which applied only to Madison County, created a county board of health and named its members. The board of health was to elect a county physician and quarantine officer to inspect the county institutions to see "that each [was] kept in a sanitary condition." *Sams*, 217 N.C. at 285, 7 S.E.2d at 541. The Court determined that the act directly affected health and sanitation and noted that the act was "in conflict with the [s]tate-wide policy as contemplated by the Constitution and established by general laws regulating the composition of county boards of health throughout the State and the election of county physicians." *Id.* at 285-86, 7 S.E.2d at 541; *see also Lamb v. Board of Education*, 235 N.C. 377, 379, 70 S.E.2d 201, 203 (1952) (holding local statute relating to health and sanitation unconstitutional, noting that it was in conflict with the general law because it limited the spending of a county board of education to provide sanitary conditions in schools through the sewerage system and the water supply); *Idol v. Street*, 233 N.C. 730, 65 S.E.2d 313, 315 (1951) (holding local statute relating to health unconstitutional, in part because it conflicted with statewide statutes requiring separate elections of county and city health officers by allowing the board of aldermen and the board of commissioners to create by appointment a joint city-county board of health).

This Court reached a similar conclusion in *Board of Health v. Comrs. of Nash*, 220 N.C. 140, 16 S.E.2d 677 (1941), which involved two local statutes that affected the process of appointment of a health officer for Nash County. The general law provided that the board of health would elect a county health officer. If the board failed to appoint an officer, the secretary of the State Board of Health was to do so. One local statute altered this process by providing that the appointment of the health officer of Nash County would not become effective until the Board of County Commissioners of Nash County

approved the appointment. The other statute provided that if the board of county commissioners disapproved the appointment, the board of health would appoint another, and if the board of county commissioners did not approve the second appointment, the secretary of the State Board of Health then would appoint an officer. The Court declared that "[t]he position that a law affecting the selection of a public health officer intimately charged with the administration of such laws, where contact with the subject is more immediate[,] is not a 'law relating to health,' is not tenable." *Id.* at 143, 16 S.E.2d at 679. The Court held that the statutes were unconstitutional because they related to health, and stated, "This Court is . . . committed to the proposition that a law affecting the selection of officers to whom is given the duty of administering the health laws is a law 'relating to health.' " *Id.*

We remain committed to that proposition. The acts before us, like those in *Sams* and *Board of Health*, are in conflict with the general laws regulating the selection of personnel to enforce the Code, the enforcement of which unquestionably affects health and sanitation. The City no longer can choose who will perform inspections in its jurisdiction. We conclude that the three local acts that alter the selection process of those who will enforce the Code affect health and sanitation. Because the unconstitutionality of these acts is plain and clear, *Emerald Isle*, 320 N.C. at 647, 360 S.E.2d at 761, we hold that they are prohibited by the Constitution, Article II, Section 24. They therefore are void pursuant to subsection (3) of that section. Accordingly, for the reasons stated, we affirm the Court of Appeals on this issue.

[2] The City argues that the Court of Appeals should not have affirmed the trial court's ruling that its judgment holding the acts unconstitutional would apply prospectively only. In affirming the trial court, the Court of Appeals relied on *Insurance Co. v. Ingram, Comr. of Insurance*, 301 N.C. 138, 271 S.E.2d 46 (1980), wherein this Court acknowledged that it "has . . . retreated from the absolute rule that an unconstitutional statute is a nullity." *Id.* at 149, 271 S.E.2d at 52. The Court of Appeals applied the test for retroactive application discussed in *Ingram:* "[A] test of reasonableness and good faith is to be applied in determining the effect which a judicial decision that a statute is unconstitutional will have on the rights and obligations of parties who have taken action pursuant to the invalid statute." *Id.* The City contends that this test has been usurped by the three-pronged retroactivity test announced by the United States Supreme Court in

*Chevron Oil Co. v. Huson,* 404 U.S. 97, 30 L. Ed. 2d 296 (1971), and adopted by this Court in the subsequently vacated decision of *Swanson v. State of North Carolina,* 329 N.C. 576, 407 S.E.2d 791, *on reh'g,* 330 N.C. 390, 410 S.E.2d 490 (1991), *vacated,* — U.S. —, 125 L. Ed. 2d 713 (1993). We disagree.

*Swanson* involved an action by retired federal employees for refunds of state income taxes. We noted that it was "a federal question as to whether the rule is to be applied retroactively." *Swanson,* 329 N.C. at 581, 407 S.E.2d at 793. The United States Supreme Court vacated our decision in that case and remanded for reconsideration in light of *Harper v. Virginia Dep't of Taxation,*— U.S. —, 125 L. Ed. 2d 74, *cert. granted and judgment vacated, Lewy v. Virginia Dep't of Taxation,* — U.S. —, 125 L. Ed. 2d 713 (1993). *See Swanson v. North Carolina,* — U.S. —, 125 L. Ed. 2d 713 (1993), *on remand,* 335 N.C. 674, 441 S.E.2d 537 (1994). In *Harper* the United States Supreme Court stated:

> The Supremacy Clause . . . does not allow federal retroactivity doctrine to be supplanted by the invocation of a contrary approach to retroactivity under state law. Whatever freedom state courts may enjoy to limit the retroactive operation of their own interpretations of state law . . . cannot extend to their interpretations of federal law.

*Harper,* — U.S. at —, 125 L. Ed. 2d at 88 (citations omitted). Because the case before us involves an issue of state constitutional law, the foregoing from *Harper* is inapplicable, and we continue to apply the test for retroactive application discussed in *Ingram* and relied on by the Court of Appeals.

The Court of Appeals concluded under the *Ingram* test that defendants reasonably relied on the acts and "acted in good faith in carrying out the mandate of the General Assembly." *City of New Bern,* 113 N.C. App. at 106, 437 S.E.2d at 660. We agree. There was no evidence of bad faith on the part of defendants and their reliance on the acts was reasonable. Further: " 'The actual existence of a statute, prior to . . . a determination [of unconstitutionality], is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration.' " *Ingram,* 301 N.C. at 148, 271 S.E.2d at 51 (quoting *Chicot Co. Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 374, 84 L. Ed. 329, 332-33, *reh'g denied,* 309 U.S. 695, 84 L. Ed. 1035 (1940)). Such is true

here; the county has performed the inspections, and they cannot be undone at this juncture without the risk of untoward consequences.

Based on all of these factors, the trial court did not err in applying its ruling of unconstitutionality prospectively only. Accordingly, we affirm the Court of Appeals on this issue.

[3] The City also argues, without citation, that the trial court erred by apportioning the costs of the declaratory judgment action equally between the City and each defendant. It contends that defendants knew, or should have known, that their inspections pursuant to these acts were prohibited by the Constitution; therefore, the City should not be required to share in the costs of the action below.

N.C.G.S. § 1-263 of the Declaratory Judgments Act provides: "In any proceeding under this article the court may make such award of costs as may seem equitable and just." N.C.G.S. § 1-263 (1983). It was within the trial court's discretion under this statute to apportion costs as it deemed equitable. In *Board of Managers v. Wilmington*, 237 N.C. 179, 74 S.E.2d 749 (1953), this Court upheld a similar apportionment of costs in a declaratory judgment action involving constitutional challenges to statutes. There, we stated, "This proceeding is to declare rights, status and other legal relations of all the parties under a number of local Acts. All were vitally interested. It is equitable and just that the costs should be equally divided between [them]." *Id.* at 195, 74 S.E.2d at 761. The same is true here. The City has not shown that the trial court abused its discretion, and we cannot say that apportioning the costs in this way is "manifestly unsupported by reason." *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985). We therefore affirm the Court of Appeals on this issue.

Accordingly, the decision of the Court of Appeals is affirmed.

AFFIRMED.