Justice BEASLEY
dissenting.
Because I disagree with the majority’s holding that the Boone Act does not violate Article II, Section 24,1 would affirm the decision of the three-judge panel of the Superior Court, Wake County, that the revocation of the extraterritorial jurisdiction powers of the Town of Boone (Town) violated “the prohibition on local acts contained in Article II, Section 24 of the North Carolina Constitution.” Therefore, I respectfully dissent.
The first issue before us is to determine whether the facial challenge passes constitutional muster. The party bringing forth a facial challenge “must show that there are no circumstances under which the statute might be constitutional.” Beaufort Cty. Bd. of Educ. v. Beaufort Cty. Bd. of Comm’rs, 363 N.C. 500, 502, 681 S.E.2d 278, 280 (2009) (citation omitted). This Court “seldom upholdfs] facial challenges because it is the role of the legislature, rather than this Court, to balance disparate interests and find a workable compromise among them.” Id. at 502, 681 S.E.2d at 280. This Court has consistently stated that a facial challenge is “the most difficult challenge to mount successfully.” State v. Bryant, 359 N.C. 554, 564, 614 S.E.2d 479, 485 (2005) (quoting United States v. Salerno, 481 U.S. 739, 745, 107 S. Ct. 2095, 2100, 95 L. Ed. 2d 697, 707 (1987)). However, this Court’s analysis does not end there. This Court must also “measure the balance struck by the legislature against the minimum standards of the constitution.” Id. at 565, 614 S.E.2d at 486 (quoting Henry v. Edmisten, 315 N.C. 474, 491, 349 S.E.2d 720, 731 (1986)). “The best way for the Court to discharge this function is for it to enunciate a workable principle as to what process the law of the land minimally requires.” Henry, 315 N.C. at 491, 340 S.E.2d at 731. Here those minimum standards require that the General Assembly not enact local *168 laws that relate to the prohibited subjects enumerated within Article n, Section 24. The Boone Act grants the General Assembly the authority to withdraw certain powers from the Town that relate to the constitutionally prohibited subjects listed in Article II, Section 24; therefore, the act cannot survive a facial challenge.
The General Assembly has broad powers; however, it was never the intent of the drafters of the constitution that the General Assembly be granted unbridled powers. Hence, Article II, Section 24 of the North Carolina Constitution (the Local Act Prohibition) provides instances in which the General Assembly is prohibited from enacting statutes that directly impact the welfare and services of local governments. Under the Local Act Prohibition, the North Carolina Constitution bars the General Assembly from enacting local laws, rather than general laws, affecting fourteen enumerated subjects. N.C. Const, art. II, § 24. In relevant part, the Local Act Prohibition provides that:
(1) Prohibited subjects. - The General Assembly shall not enact any local, private, or special act or resolution:
(a) Relating to health, sanitation, and the abatement of nuisances;
[[Image here]]
(e) Relating to non-navigable streams;
[[Image here]]
(j) Regulating labor, trade, mining, or manufacturing.
Id. art. II, § 24(1). The Local Act Prohibition further provides that “[a]ny local, private, or special act or resolution enacted in violation of the provisions of this Section shall be void.” Id. art. II, § 24(3).
This Court has acknowledged that in enacting the Local Act Prohibition “the people were motivated by the desire that the General Assembly should legislate for North Carolina in respect to the subjects specified as a single united commonwealth rather than as a conglomeration of innumerable discordant communities.” Idol v. Street, 233 N.C. 730, 732-33, 65 S.E.2d 313, 315 (1951). Further, this Court has stated that the purpose behind adopting the Local Act Prohibition was to
free the General Assembly from the enormous amount of petty detail which had been occupying its attention, to enable it to devote more time and attention to general legislation of statewide interest and concern, to strengthen *169 local self-government by providing for the delegation of local matters by general laws to local authorities, and to require uniform and coordinated action under general laws on matters related to the welfare of the whole State.
Williams v. Blue Cross Blue Shield of N.C., 357 N.C. 170, 188, 581 S.E.2d 415, 428 (2003) (emphasis in original) (quoting High Point Surplus Co. v. Pleasants, 264 N.C. 650, 656, 142 S.E.2d 697, 702 (1965)). Therefore, if the General Assembly aims to address one of the subjects in the Local Act Prohibition, it must do so by enacting statewide laws of general applicability rather than local acts. See Williams, 357 N.C. at 188-89, 581 S.E.2d at 428 (concluding that if the General Assembly decided “to address employment discrimination by means of a state statute, Article II, Section 24 requires that it enact either a statewide law applicable to employers and their employees ... or a general law that makes reasonable classifications based upon rational differences of circumstances”).
The Local Act Prohibition provides express restrictions on the General Assembly’s authority in order to safeguard against an abuse of legislative power. See N.C. Const. art. n, § 24 (limiting certain local, private, or special acts). As previously stated, the General Assembly is prohibited from enacting local, private, or special acts relating to one of the enumerated subjects. Id. art. II, § 24(1). Additionally, the Local Act Prohibition prevents the General Assembly from circumventing the prohibitions in subsection (1) by also preventing the “enact[ment] [of] any such local, private, or special act by the partial repeal of a general law.” Id. art. II, § 24(2). As a disincentive for the General Assembly to overstep its powers, the Local Act Prohibition states that “[a]ny local, private, or special act or resolution enacted in violation of the provisions of this Section shall be void.” Id. art. II, § 24(3) (emphasis added).
In addition to the constitutional limitations, this Court must determine through judicial review, whether the General Assembly has abused' or overstepped its legislative power or authority, thereby assessing the constitutionality of legislative acts. State ex rel. McCrory v. Berger, 368 N.C. 633, 635, 781 S.E.2d 248, 250 (2016) (citing Bayard v. Singleton, 1 N.C. (Mart.) 5, 6-7 (1787)). Thus, this Court is required to ensure that the General Assembly is acting within its powers and that its actions do not violate direct prohibitions of our constitution.
The Boone Act, which was enacted in 2014 by the General Assembly, withdrew the extraterritorial jurisdiction from the Town and returned regulatory control of the extraterritorial area to the County of Watauga. *170 Act of June 26, 2014, ch. 33, sec. 1, 2013 N.C. Sess. Laws (Reg. Sess. 2014) 139, 140 (the Boone Act) (“Notwithstanding any other provision of law, the Town of Boone shall not exercise any powers of extraterritorial jurisdiction as provided in Article 19 of Chapter 160A of the General Statutes.”). The issue here is whether the Boone Act violates the Local Act Prohibition of Article II, Section 24 of the state constitution.[1] It is well settled law that courts in North Carolina
have the power, and it is their duty in proper cases, to declare an act of the General Assembly unconstitutional— but it must be plainly and clearly the case. If there is any reasonable doubt, it will be resolved in favor of the lawful exercise of their powers by the representatives of the people.
Glenn v. Bd. of Educ., 210 N.C. 625, 529-30, 187 S.E. 781, 784 (1936).
The majority is convinced that because Article VII, Section 1 grants plenary power to the legislature, its analysis ends as it concludes that the General Assembly has the constitutional authority to enact the Boone Act. The majority concludes that Article II, Section 24 does not apply here. According to Article VII, Section 1:
The General Assembly shall provide for the organization and government and the fixing of boundaries of counties, cities and towns, and other governmental subdivisions, and, except as otherwise prohibited by this Constitution, may give such powers and duties to counties, cities and towns, and other governmental subdivisions as it may deem advisable.
N.C. Const, art. VII, § 1. The majority concludes that of the two clauses in paragraph one of Article VII, Section 1, it is only under the second clause that “the General Assembly’s authority over local governments [is] expressly subjected] to limitations imposed by other constitutional provisions, including the constraints on local acts in Article II, Section 24.” Assuming that the qualification contained within Article VII, Section 1 only applies to the second clause, I disagree with the majority’s conclusion that the Boone Act falls exclusively within the first clause. As stated in the concurring opinion, the provisions in Article VII, Section 1 relate *171 to both municipal boundaries (clause 1) and municipal powers (clause 2). As the concurring opinion correctly states, “extraterritorial jurisdiction relates to regulatory power or authority rather than the establishment of municipal boundaries” and therefore, the Boone Act is more properly interpreted as relating to the municipal powers in the second clause. As such, the Boone Act is subject to Article VII, Section 1⅛ limiting language, including the limitations imposed by Article II, Section 24. The concurring opinion also correctly states that determining the constitutionality of the Boone Act requires an analysis of Article II, Section 24’s prohibitions; the analysis does not stop at Article VII, Section 1, as argued by the majority. Additionally, while I agree with most of the discussion set forth in the concurring opinion regarding Article II, Section 24 and the test to be applied under it, I disagree with the application of the test proffered in the concurring opinion to the facts of this case. Specifically, in regards to whether the Boone Act violates the constitutional limitations imposed by the Local Act Prohibition, I believe that this Court’s decisions in City of New Bern v. New Bern-Craven County Board of Education, 338 N.C. 430, 450 S.E.2d 735 (1994), and Williams, 357 N.C. 170, 581 S.E.2d 415, guide our analysis.
To determine whether legislation violates the Local Act Prohibition we must determine whether an act is local or general. This Court follows the “reasonable classification” test to determine whether a law is general or local. See McIntyre v. Clarkson, 254 N.C. 510, 518-19, 119 S.E.2d 888, 894-95 (1961). An act is deemed local if it “discriminates between different localities without any real, proper, or reasonable basis or necessity-a necessity springing from manifest peculiarities clearly distinguishing those of one class from each of the other classes, and imperatively demanding legislation for each class separately that would be useless or detrimental to the others.” McIntyre, 254 N.C. at 518, 119 S.E.2d at 894 (citation omitted). Conversely, a law is general if “any rational basis reasonably related to the objective of the legislation can be identified which justifies the separation of units of local government into included and excluded categories.” Adams v. N.C. Dep’t. of Nat. & Econ. Res., 295 N.C. 683, 691, 249 S.E.2d 402, 407 (1978) (quoting Joseph S. Ferrell, Local Legislation in the North Carolina General Assembly, 45 N.C. L. Rev. 340, 391 (1967)). Here the parties are in agreement that the Boone Act is a local act. Therefore, the Boone Act discriminates against the Town without “any real, proper, or reasonable basis.” McIntyre, 254 N.C at 518, 119 S.E.2d at 894 (citation omitted).
In City of New Bern, this Court analyzed the constitutionality of legislation that withdrew the City of New Bern’s inspection and *172 enforcement authority related to building, construction, fire, and safety codes for specific properties located within the city limits and reassigned those responsibilities to Craven County. City of New Bern, 338 N.C. at 433-44, 450 S.E.2d at 737-38. The City brought a challenge under Article II, Section 24. The legislation challenged in City of New Bern effectively shifted the responsibility of enforcing the building code, a power assigned to the city pursuant to N.C.G.S. § 160A-411, from the city to the county.[2] Id. at 437, 450 S.E.2d at 739-40. After concluding that the challenged acts were local acts, rather than general, this Court addressed whether the removal of the city’s power to exercise inspection and enforcement authority pursuant to N.C.G.S. § 160A-411 related to “health, sanitation, or the abatement of nuisances.” Id. at 439, 450 S.E.2d at 740. This Court reviewed the legislature’s purpose for creating the building code and held that inspections pursuant to the building code affect health and sanitation. Id. at 439-40, 450 S.E.2d at 740-41. This Court concluded that by “alter[ing] the selection process of those who will enforce the [c]ode,” the legislation affected health and sanitation and was prohibited by the Local Act Prohibition. Id. at 442, 450 S.E.2d at 742.
The Court’s reasoning in City of New Bern, that a law altering who is charged with enforcing health and sanitation laws is a law related to health and sanitation, has been consistently applied to similar local legislation brought before this Court. See Idol, 233 N.C. at 732-33, 65 S.E.2d at 314-15 (holding unconstitutional a local act authorizing the board of aldermen and board of commissioners to create a joint city-county board of health); Bd. of Health v. Bd. of Comm’rs, 220 N.C. 140, 142-44, 16 S.E.2d 677, 678-79 (1941) (holding that local statutes that affected the process of appointment of a health officer were unconstitutional because they related to health); Sams v. Bd. of Cty. Comm’rs, 217 N.C. 284, 7 S.E.2d 540 (1940) (holding that legislation shifting the responsibility for enforcement of laws affecting the health of the public was barred by Article II, Section 29 (now Article 13, Section 24)). Similarly, in the present case the Boone Act directly impacts the enforcement of laws, which themselves affect health and sanitation, by removing the Town’s power to enforce the building code, fire code, and plumbing code, and other like regulations within the extraterritorial jurisdiction area. This *173 Court in City of New Bern held that shifting the responsibility of enforcing the building code away from the City inescapably related to health and sanitation, because the
Code regulates plumbing in an effort to maintain sanitary conditions in the buildings and structures of this state and thus directly involves sanitation, and consequently the protection of the health of those who use the buildings. The enforcement of the fire regulations protects lives from fire, explosion and health hazards.
City of New Bern, 338 N.C. at 440, 450 S.E.2d at 741. This same reasoning must be applied here in that the Boone Act shifts the responsibility for enforcement of laws that affect health and sanitation—mainly, the building code, fire code, and plumbing code—from the Town to the County of Watauga. The effect on the enforcement of the building, fire, and plumbing codes in the present case is similar to that in City of New Bern, because the Boone Act has “alter[ed] the selection process of those who will enforce” those laws. Id. at 442, 450 S.E.2d at 742. As noted in the concurring opinion and our recent decision in City of Asheville v. State, _ N.C. _, _, _ S.E.2d _, _. (2016), our current test focuses on whether, in light of its stated purpose and practical effect, the Boone Act has a material, but not exclusive or predominant, connection to one of the prohibited subjects. Thus, I would hold that shifting the responsibility for enforcement of the building code, fire code, and plumbing code would have a material connection to health and sanitation and thus, is a violation of the Local Act Prohibition of the North Carolina Constitution.[3]
Moreover, this Court’s decision in Williams lends further support for the conclusion that the Boone Act violates the Local Act Prohibition. In Williams the challenged legislation authorized Orange County to adopt an antidiscrimination ordinance that made it unlawful for an employer “[t]o fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to that individual’s compensation, terms, conditions, or privileges of employment, because of such individual’s race, color, religion, sex, national origin, age, disability, familial status, or veteran status.” 357 N.C. at 175, 581 S.E.2d at 420. After concluding that the challenged legislation was a local act, this *174 Court considered whether the legislation regulated any of the subjects listed in the Local Act Prohibition. Specifically, the Court in Williams sought to determine whether the legislation “regulate[d] labor or trade.” Id. at 189, 581 S.E.2d at 429; see N.C. Const. art. II, § 24(1)(j).
In considering whether the challenged legislation regulated labor or trade, this Court rejected the argument that the legislation regulated only the acts of discrimination and did not involve labor or trade. Williams, 357 N.C. a,t 189, 581 S.E.2d at 429. Rather, this Court concluded that “while the intent of the enabling legislation and the Ordinance is to prohibit discrimination in the workplace, the effect of these enactments is to govern the labor practices of lperson[s] engaged in an industry affecting commerce [that] has 15 or more employees’ in Orange County.” Id. at 189, 581 S.E.2d at 429 (first alteration in original) (emphasis added). Thus, the Court focused on the practical effect of the legislation, and not its intended purpose, in determining that the legislation violated the Local Act Prohibition. As demonstrated by Williams, this Court’s analysis is not limited to the legislative purpose or intent of an enactment. Rather, the analysis also considers the legislation’s practical effect, see id. at 189-90, 581 S.E.2d at 429 (concluding that while the intent of the legislation was to prohibit discrimination, the legislation had the “practical effect of regulating trade”), and whether it has a material connection to the prohibited subjects of the Local Act Prohibition, as noted in the concurring opinion and our recent decision in City of Asheville, __ N.C. at _, _ S.E.2d at _.
Considering the practical effect of the Boone Act, I,would hold that the Act violates the Local Act Prohibition. The Boone Act removes power from the Town of Boone to act within the extraterritorial jurisdiction area one mile outside of the town limits. The practical effect of removing this power is that the Town of Boone cannot enforce its ordinances within the one-mile extraterritorial jurisdiction area, including those ordinances that relate to health and sanitation, N.C. Const. art. II, § 24(1)(a), relate to non-navigable streams, id. art. II, § 24(l)(e), and regulate labor, trade, mining, or manufacturing, id. art. II, § 24(l)(j). According to the Town’s Unified Development Ordinance (UDO), the purposes and goals of the UDO include “[p]romot[ing] the health, safety, and general welfare within the Town of Boone and its environs,” “[p]rotect[ing] water quality,” “[p]rotect[ing] designated water supply watersheds,” “[p]revent[ing] degradation of natural drainage areas,” and “[s]triv[ing] to minimize public and private losses due to slope failure caused by land disturbance of steep and very steep slopes.” Boone, N.C., Unified Dev. Ordinance, art. 1, §§ 1.03.01, 1.04.01 (Jan. 1, 2014). *175 Because these ordinances themselves relate to health, sanitation, and the abatement of nuisances, as well as other prohibited subjects, legislation that shifts the responsibility of their enforcement by removing the Town’s ability to enforce those ordinances also relates to health, sanitation, and the abatement of nuisances, and thereby violates the Local Act Prohibition. See City of New Bern, 338 N.C. at 442, 450 S.E.2d at 742 (holding that the shifting of responsibility for enforcement of the building code affects health and sanitation, and thus, is prohibited by the Local Act Prohibition); Bd. of Health, 220 N.C. at 143, 16 S.E.2d at 679 (concluding that two local statutes that affected the process of appointment of a health officer for Nash County were unconstitutional because “[tjhis Court is . . . committed to the proposition that a law affecting the selection of officers to whom is given the duty of administering the health laws is a law ‘relating to health’ ”). Thus, by determining that the practical effect of the Boone Act relates to health, sanitation, and the abatement of nuisances, I would conclude that there is a material connection between the Boone Act and the subjects listed in the Local Act Prohibition.
As stated above, while I agree with the general discussion in the com curring opinion, I disagree with the result that the Boone Act does not violate the Local Act Prohibition. After analyzing individually each of the subjects in the Local Act Prohibition that the Town alleged the Boone Act violated, the concurring opinion concluded that the Boone Act does not materially connect to either “health, sanitation, and the abatement of nuisances,” N.C. Const, art. II, § 24(l)(a),[4] “non-navigable streams,” *176 id. art. II, § 24(l)(e),[5] or “labor, trade, mining, or manufacturing,” id. art. II, § 24(l)(j).[6] However, this Court should not analyze each of the enumerated subjects in isolation. In determining if the Boone Act violates the Local Act Prohibition, this Court should view the entire Local Act Prohibition. Thus, if this Court views all of the statutes within Article 19 of Chapter 160A that relate to “health, sanitation, and the abatement of *177 nuisances,” “non-navigable streams,” and “labor, trade, mining, or manufacturing” as a whole, then the Boone Act clearly has a material connection to the prohibited subjects enumerated in the Local Act Prohibition.
Because I disagree with the majority’s holding that the Boone Act does not violate Article II, Section 24,1 would affirm the decision of the three-judge panel of the Superior Court, Wake County that the revocation of the Town’s powers of extraterritorial jurisdiction violated “the prohibition on local acts contained in Article II, Section 24 of the North Carolina Constitution.” Therefore, I respectfully dissent.

. Along with the issue of whether the Boone Act violates the Local Act Prohibition, this Court is presented with issues of sovereign immunity and standing. I agree with the analysis in the concurring opinion regarding these issues, as well as the procedural history of this case.

. Pursuant to N.C.G.S. § 160A-411, the General Assembly authorizes cities to inspect and enforce the North Carolina Building Code within their planning jurisdictions. This statute also appears within Article 19 of Chapter 160A; thus, it is among the powers that the Boone Act withdraws from the Town of Boone.

. The concurring opinion correctly notes that the facts at issue in this case differ from the facts at issue in City of New Bern because City of New Bern involved the removal of a single power, rather than a “bundle of powers” as is the case here. However, the principles espoused in City of New Bern—specifically the interpretation of whether the act relates to health and sanitation—are instructive.

. As quoted verbatim from the concurring opinion, the following statutory provisions removed from the Town implicate issues relating to health, sanitation, and the abatement of nuisances: N.C.G.S. § 160A-381 (2015) (granting zoning authority to municipalities “[f]or the purpose of promoting health, safety, morals, or the general welfare of the community” and authorizing municipalities to regulate and restrict the height, number of stories and size of buildings and other structures; the percentage of lots that may be occupied; the size of yards, courts and other open spaces; population densities; and the location and use of buildings, structures and land); N.C.G.S. § 160A-383 (2015) (providing that “[zjoning regulations shall be designed to promote the public health, safety, and general welfare” and may address issues such as the provision of adequate light and air; the prevention of overcrowding; avoiding undue population concentration; lessening street congestion; securing safety from fire, panic, and dangers; and facilitating the provision of transportation, water, sewerage, schools, parks, and other public requirements); N.C.G.S. § 160A-383.4 (2015) (authorizing regulations seeking to reduce the amount of energy consumption through the use of measures like density bonuses and similar incentives); N.C.G.S. § 160A-412(a) (2015) (providing for the enforcement of state laws and local ordinances relating to the construction of buildings and other structures; the installation of facilities such as plumbing, electrical, and air-conditioning systems; the safe, sanitary, and healthful maintenance of buildings and other structures; and other issues specified by the city council); N.C.G.S. § 160A-424(a) (2015) (providing that “[t]he inspection department *176 may malee periodic inspections, subject to the council’s discretion, for unsafe, unsanitary, or otherwise hazardous and unlawfifl conditions in buildings or structures within its territorial jurisdiction”); N.C.G.S. § 160A-426(b) (2016) (providing that “an inspector may declare a nonresidential building or structure within a community development target area to be unsafe if’ it “appears... to be vacant or abandoned” or “appears... to be in such dilapidated conditions as to cause or contribute to blight, disease, vagrancy, fire or safety hazard, to be a danger to children, or to tend to attract persons intent on criminal activities or other activities that would constitute apublic nuisance”); N.C.G.S. § 160A-432(c) (2015) (stating that “[n]othing in this section shall be construed to impair or limit the power of the city to define and declare nuisances and to cause their removal or abatement by summary proceedings, or otherwise”); N.C.G.S. § 160A-439 (2015) (authorizing the adoption of ordinances providing for the repair, closing, and demolition of nonresidential buildings or structures “that fail to meet minimum standards of maintenance, sanitation, and safely established by the governing body”); and N.C.G.S. § 160A-441 (2015) (finding “that the existence and occupation of dwellings in this State that are unfit for human habitation are inimical to the welfare and dangerous and injurious to the health, safety and morals of the people” and “that a public necessity exists for the repair, closing or demolition of such dwellings”).

. As quoted verbatim from the concurring opinion that notes that the following statutory provisions removed from the Town implicate issues relating to non-navigable streams: N.C.G.S. § 160A-458 provides that “[a]ny city may enact and enforce erosion and sedimentation control ordinances as authorized by Article 4 of Chapter 113A of the General Statutes, and in such enactment and enforcement shall comply with all applicable provisions of Article 4.” In addition, N.C.G.S. § 113A-51 provides that “[t]he sedimentation of streams, lakes and other waters of this State constitutes a major pollution problem,” that “control of erosion and sedimentation is deemed vital to the public interest and necessary to the public health and welfare,” and that “the purpose of’ Article 4 is “to provide for the creation, administration, and enforcement of a program and for the adoption of minimal mandatory standards which will permit development of this State to continue with the least detrimental effects from pollution by sedimentation.” N.C.G.S. § 113A-51 (2015); N.C.G.S. § 160A-458.1 provides that “[a]ny city may enact and enforce floodway regulation ordinances as authorized” and in compliance with “Part 6 of Article 21 of Chapter 143 of the General Statutes,” N.C.G.S. § 160A-458.1, with the purposes of floodplain regulation being to “[m]inimize the extent of floods by preventing obstructions that inhibit water flow and increase flood height and damage,” “ [p]revent and minimize loss of life, injuries, property damage, and other losses in the flood hazard areas,” and “[pjromote the public health, safety, and welfare of citizens of North Carolina in flood hazard areas,” N.C.G.S. § 143-215.51 (2015). N.C.G.S. § 160A-459 provides that “[a] city may adopt and enforce a storm-water control ordinance to protect water quality and control water quantity.” N.C.G.S. § 160A-459 (2015).

. The Town fails to point to any statutory provisions in support of the argument that the Boone Act relates to “labor, trade, mining, or manufacturing.”